## Richmond

Mundy Motor Lines v. E. I. Du Pont De Nemours and Company.

April 28, 1958.

Record No. 4780.

Present, All the Justices.

The opinion states the case.

*Leonard G. Muse* (*Woods, Rogers, Muse & Walker*, on brief), for the appellant.

*Aubrey R. Bowles, Jr.* (*Jack N. Herod; Henry E. Ketner; Bowles, Anderson, Boyd, Clarke & Herod; Carl E. Geuther*, on brief), for the appellee.

*E. Ballard Baker; Wicker, Baker & Goddin (amicus curiae)*, for General Motor Lines, Inc., and Intrastate Common Carriers Division of the Virginia Highway Users Association.

MILLER, J., delivered the opinion of the court.

This is a suit for a declaratory judgment instituted by E. I. du Pont de Nemours and Company against Mundy Motor Lines. Its object is to have the court determine and declare whether or not a contract entered into between the litigants is valid. Both concede that if § 46-2, Code 1950, is valid, then it renders the contract unenforceable and thus that section is challenged and its validity is tested in this proceeding.

Section 46-2 follows:

"It shall be unlawful for any person, firm or corporation, after receiving a license from the Commissioner as herein provided to transport any commodity in any territory at a less freight rate or charge than that fixed by the State Corporation Commission for a common carrier for the same commodity in the same territory."

The validity of this section is challenged by du Pont on several grounds. Those chiefly relied upon are that (a) it is so vague, indefinite and uncertain as to make its application impossible; (b) it was repealed by implication by § 56-276, Code 1950,[1] which prohibits the Corporation Commission from fixing rates for contract carriers by motor vehicle, and (c) it is an unwarranted and unconstitutional exercise of the police power to regulate private business not affected with a public interest.

No facts are in controversy. A plant at Martinsville, Virginia, is operated by du Pont in which it manufactures synthetic fiber yarn. Mundy is the holder of permits issued by the State Corporation Commission pursuant to provisions of Chapter 12, Title 56, Code of Virginia, 1950, as amended, under which it operates as an intrastate contract carrier by motor vehicle.

On October 15, 1956, du Pont and Mundy entered into a written agreement effective from date until canceled. Insofar as pertinent to the legal questions presented, it provided that du Pont would make available for hauling by Mundy between Martinsville and

---

[1] "* * * [P]rovided, however, that the Commission shall not have the power to regulate or control the rates and charges of contract carriers by motor vehicle and it shall not require any reports from such carriers with respect thereto."

Roanoke, Virginia, synthetic fiber yarn of at least a minimum weight of 25,000 pounds per truck load, with the minimum of two truck loads per month, and for its transportation Mundy would be paid "at a rate of 22 cents per 100 pounds or the minimum rate, if any, required by Virginia law, whichever shall be greater." This contract was a continuation of a mutually satisfactory business relationship that had existed between the companies since du Pont's plant at Martinsville was established years ago.

The depositions in this case were taken during April, 1957, and as of the 18th day of that month there were in Virginia 39 common carriers of property by motor vehicle of all types and approximately 4,000 contract carriers by motor vehicle, a majority of which were single truck carriers.

In Virginia there are five recognized types of common carriers of property, *i.e.*, rail, water, motor vehicle, air, and express. The rates of common carriers by rail are "fixed" by territories by order of the State Corporation Commission after notice and a public hearing. Rates of common carriers by motor vehicle are "filed" with the Commission on a point to point basis by the carriers, and if not objected to, become operative.

Some localities or communities are served by all types of common carriers of property, some by one type or another, and some are served by no common carriers of property. The established rates for transportation of the same commodities by common carriers between the same points vary and are materially different among the several types of common carriers. Rates may also vary between two points, dependent upon which way the shipment is going. This is true between Martinsville and Roanoke. Under this state of affairs, the three expert witnesses who testified for the litigants acknowledged their inability to determine the applicable rate to be applied for the transportation of property by a contract carrier between two designated points. At no time since the enactment of § 46-2 in 1932 has the State Corporation Commission attempted to enforce it and the Commission has never fixed the rates to be charged by contract carriers of property anywhere in the state.

In 1956 § 46-2 and the opinion in the case of *Overnite Transportation Co.* v. *L. M. Woodfin, et al.*, 196 Va. 747 (1955), 85 S. E. 2d 217, were brought to Mundy's attention. The sentence in the opinion to which Mundy's attention was especially directed is found on page 749 of 196 Va. and reads:

"It [Woodfin as a contract carrier] hauls goods under special and individual contracts, Code § 56-273(f), and its rates are not subject to regulation by the Commission, Code § 56-276, but are subject to the statutory limitation set forth in § 46-2, *supra*."

During the years that Mundy had operated, its officers had not been aware of the provisions of § 46-2 but when apprised of its existence and the statement made in the *Overnite* case, they became apprehensive and fearful that compliance with the contract of October 15, 1956, violated that statute and the company might be subjected to the penalties provided in § 46-18, Code 1950. Gardner A. Mundy, president of the company, wrote to du Pont on December 13, 1956, in part, as follows:

"While our contract of October 15, 1956, provides for the minimum rate required by Virginia law, if that be greater than 22 cents per 100 pounds, I am more concerned by the possibility of criminal prosecutions under Sect. 46-18, if the 22 cents per 100 pounds rate specified by our contract is in violation of Sect. 46-2 under all the circumstances.

"I, therefore, regretfully advise you that unless you are prepared to recognize the common carrier rate by motor vehicle of 38 cents per hundred pounds as the minimum rate required by Virginia law with respect to all future shipments under our contract of October 15, 1956, my company will not perform in the future any of the obligations imposed on it by that contract."

Mundy determined upon the 38-cent rate because it was the highest rate found to be enforced between Martinsville and Roanoke for the transportation of synthetic fiber yarn irrespective of whether the carrier was a common carrier by motor vehicle or by rail and irrespective of whether the shipment was from Martinsville to Roanoke or vice versa. The company was sure that having selected the highest rate, it would not be charged with violation of the statute.

In *Overnite Transportation Co.* v. *L. M. Woodfin, et al., supra,* and in its sequel, *L. M. Woodfin, et al.* v. *Overnite Transportation Co.*, 199 Va. 165, 98 S. E. 2d 525, the validity of § 46-2 was not questioned. The complainant's bill for injunction in each of those cases was based on that section, the defendants did not challenge the statute in any way, and the litigants in each case accepted and treated it as valid in all respects.

Though Mundy appealed from the decree below that held § 46-2 to be invalid, yet in its brief its position is stated thus:

"The situation confronting Mundy and other contract carriers is perplexing. In fact, the whole situation is a mass of contradictions. No solution can be reached until the Supreme Court of Appeals has considered the validity of § 46-2. Such a decision will determine the basic question which will serve as a guidepost to all interested parties. The issue involved affects seriously hundreds of shippers, hundreds of contract carriers of various types, and many common carriers. It affects the railroad, the contract motor carriers by motor vehicle, railway express companies, common carriers by water, and common carriers by air. All of these interests are involved; and yet no one, as of this minute, knows the answer to the problem involved."

At bar counsel for both litigants expressed the opinion that § 46-2 was invalid. However, General Motor Lines, Incorporated, filed a brief *amicus curiae* in which the history of § 46-2 and cognate sections of the Code of 1950 is traced. It is insisted that the purpose of § 46-2 and that of the cognate enactments was to protect the common carrier of property from ruinous competition by contract carriers, that the business of contract carriage of property by motor vehicle is affected with a public interest, and that § 46-2 is in the public interest and valid. *Turner* v. *Hicks*, 164 Va. 612, 180 S. E. 543.

In du Pont's brief it is pointed out that the statute does not say or indicate what common carriers' rates shall constitute the measure by which the minimum rate for transportation of property between two points by a contract carrier by motor vehicle shall be fixed; nor does it indicate whether the rates of common carriers that are not "predicated upon territories" but on "point to point transportation" shall be determinative in ascertaining the minimum rate to be required of a contract carrier; nor does it state how it shall be determined what the minimum rate to be imposed upon a contract carrier shall be where there is no common carrier serving the points between which the contract carrier transports property.

In *Williams* v. *City of Richmond*, 177 Va. 477, 14 S. E. 2d 287, an ordinance that assessed a license tax of $50 a year on conducting "any business, occupation or profession * * * for which no specific license tax is levied" was declared to be illegal and unenforceable. In holding that such a provision was too vague, indefinite and uncertain to be enforced, we approved and quoted from *Drake* v. *Drake*, 15 N. C. 110, as follows:

"If the terms in which it [a statute] is couched be so vague as to

convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative."

In 50 Am. Jur., Statutes, § 472, p. 484, the principle is stated thus:

"In the enactment of statutes reasonable precision is required. Indeed, one of the prime requisites of any statute is certainty, and legislative enactments may be declared by the courts to be inoperative and void for uncertainty in the meaning thereof. This power may be exercised where the statute is so incomplete, or so irreconcilably conflicting, or so vague or indefinite, that the statute cannot be executed and the court is unable, by the application of known and accepted rules of construction, to determine what the legislature intended, with any reasonable degree of certainty."

Like statements are found in 82 C. J. S., Statutes, § 76, p. 133; 17 M. J., Statutes, § 27, p. 269.

Upon application of the principle stated in these authorities to the acts of this case, it is apparent that § 46-2 is too vague, indefinite and uncertain to furnish any yardstick or standard by which the rates of contract carriers of property may be measured or determined. This is true even though it be conceded, as claimed in the brief *amicus curiae,* that the business of a contract carrier by motor vehicle is affected with a public interest (which we need not decide); that the operation of a motor vehicle on a public highway is a privilege and not a right; and that § 46-2 was intended to protect common carriers by motor vehicle from ruinous competition. According these factors their full weight, yet they fail to cure or clarify the vague, uncertain and insufficient language of the statute and establish a reasonable standard under which rates can be imposed on contract carriers by motor vehicle.

The section is, for the reasons stated, invalid and unenforceable. We express no opinion upon the other grounds upon which its validity is challenged.

The decree of the lower court will be affirmed on the ground herein stated. Yet it is not amiss to say that § 46-2 was expressly repealed by the 1958 Acts of the General Assembly, Chapter 541, page 685, which will become effective on the 27th day of June, 1958.

*Affirmed.*