# Richmond

## William C. Peacock v. Commonwealth of Virginia.

January 26, 1959.

Record No. 4910.

Present, All the Justices.

The opinion states the case.

*Sidney Sacks* and *Albert S. Lewis*, for the plaintiff in error.

*C. F. Hicks, Assistant Attorney General (A. S. Harrison, Jr., Attorney General*, on brief), for the Commonwealth.

Spratley, J., delivered the opinion of the court.

This case requires us to determine the validity of a provision of §§ 54-503 and 54-504, Code of Virginia, 1950, relating to the record which must be made by authorized vendors of "exempted" narcotic drugs. The two sections are contained in the "Uniform

Narcotic Drug Act," Article 11 of Chapter 15, Title 54, Code of Virginia, 1950, as amended. They read as follows:

"§ 54-503. Record to be kept by vendors of exempted preparations.—Every person who purchases for resale, or who sells narcotic drug preparations exempted by § 54-499, shall keep a record showing the quantities and kinds thereof received and sold, or disposed of otherwise, in accordance with the provisions of § 54-504."

"§ 54-504. Form and preservation of records.—The form of records shall be prescribed by the State Board of Pharmacy. The record of narcotic drugs received shall in every case show the date of receipt, the name and address of the person from whom received, and the kind and quantity of drugs received; the kind and quantity of narcotic drugs produced or removed from process of manufacture, and the date of such production or removal from process of manufacture; and the record shall in every case show the proportion of morphine, cocaine, or ecgonine contained in or producible for crude opium or coca leaves received or produced. The record of all narcotic drugs sold, administered, dispensed, or otherwise disposed of, shall show the date of selling, administering, or dispensing, the name and address of the person to whom or for whose use, or the owner and species of animal for which the drugs were sold, administered or dispensed, and the kind and quantity of drugs. Every such record shall be kept for a period of two years from the date of the transaction recorded. The keeping of a record required by or under the federal narcotic laws, containing substantially the same information as is specified above, shall constitute compliance with this section, except that every such record shall contain a detailed list of narcotic drugs lost, destroyed, or stolen, if any, the kind and quantity of such drugs, and the date of the discovery of such loss, destruction, or theft."

At the September term, 1957, of the Corporation Court of the City of Norfolk, Virginia, Part Two, a grand jury returned an indictment against William C. Peacock, sometimes hereinafter referred to as the defendant, containing two counts: The first count alleged that the defendant "did on August 26, 1957, sell, administer, dispense, and otherwise dispose of a certain narcotic drug, to-wit, camphorated tincture opium, and did then and there unlawfully and feloniously fail and omit to make and keep a record showing the date of such selling, * * * the name and address of the person to whom or for whose use the said narcotic drug was sold * * * and

did then and there unlawfully and feloniously sell and omit to make and keep a record showing the kind and quantity of such narcotic drug sold," in violation of Virginia Code, § 54-503. The second count alleged the same offense, with the exception that the narcotic drug was described as paregoric.

Upon his arraignment, the accused pleaded not guilty, and with his consent given in person, and by, and with, the advice of counsel, waived a jury, and with the concurrence of the Attorney for the Commonwealth and of the court entered of record, the whole matter of law and fact was heard and determined by the court.

At the conclusion of the Commonwealth's evidence, the court overruled a motion to strike the evidence, and at the conclusion of all the evidence, it again overruled the motion to strike the evidence. The court thereupon found defendant guilty of violating Code, § 54-503, as charged in the first count of the indictment. A motion to set aside the judgment on the ground that it was contrary to the evidence was overruled. The court then fixed defendant's punishment at confinement in the penitentiary for a term of three years and a fine of $250, Code § 54-516, as amended, and revoked his license and registration to practice his profession as an apothecary and pharmacist.

Subsequently, the court ordered that the execution of the penitentiary sentence be suspended and that Peacock be placed on probation for the term of five years, conditioned upon his good behavior during said term, compliance with certain specified conditions, and upon the payment of the fine and costs of his prosecution. Upon petition of the defendant, we granted writ of error.

The material facts are not in conflict. The sole question is one of law, and that is whether Code, §§ 54-503 and 54-504, criminal statutes, specify with reasonable certainty and definiteness the time when a vendor of "exempted" narcotic drugs should make a record of the sale or disposal of such drugs.

William C. Peacock is a licensed pharmacist and operates a drugstore in the City of Norfolk, Virginia. On August 26, 1957, about 2:30 p. m., he received at his drugstore a telephone call from Mrs. Brenda Griffin of Portsmouth, Virginia, who told him that she was sick and nervous, and wanted some paregoric. Peacock told her that her husband had requested him not to let her have any more of that drug. However, he agreed to let her have some, explaining later that he felt sorry for her, because she was addicted to the use of the

drug. Mrs. Griffin did not want to go into the drugstore, because she was not properly dressed, so she went to the booth of a service station near Peacock's drugstore, and from there telephoned the defendant, requesting him to leave the desired paregoric at the back of his store. She then walked to the vicinity of the store and watched until she saw the defendant place a bottle in a screened-in-box at the back of his store. She went to the box, obtained the bottle, placed it in a sweater which she was carrying on her arm, and started towards her husband's automobile parked nearby. She was arrested by Sergeant E. M. Towe of the Norfolk City Police Force. She began to cry and beg that the bottle be returned to her.

Sergeant Towe, upon information furnished by Mrs. Griffin's husband, had parked his automobile so that he could observe Mrs. Griffin as she obtained the drug. The bottle which he took from Mrs. Griffin was without a label and contained an amber colored liquid which, upon analysis, was found to be two ounces of camphorated tincture opium, commonly known as paregoric. Each ounce contained 1.84 grains of opium.

It is conceded that the paregoric was an "exempted" narcotic drug, which can be sold only by a licensed pharmacist regularly employed in a registered pharmacy, or in original packages by merchants and retail dealers at their places of business in rural communities and towns. Code, § 54-499, as amended.

Sergeant Towe took Mrs. Griffin to the police station, and, after interviewing her, obtained a warrant for the arrest of the defendant. He went to the latter's drugstore, and asked the defendant to permit him to see his record book of the sales of narcotics, especially paregoric. The Sergeant told Peacock what he had witnessed outside the drugstore, and that he had taken the bottle of paregoric from Mrs. Griffin. Peacock then admitted that he had placed the bottle of paregoric in the box for Mrs. Griffin; that he had let her have some paregoric on the day before, that is, August 25; and that he had not, at the time of delivery, entered the record of either sale on his narcotic book, but had planned to do so at a later time. Peacock was placed under arrest, taken to the police station, and admitted to bail. He returned directly to his drugstore, on the same day, and immediately made entries on his narcotic record book of the two sales to Mrs. Griffin, each entry showing the date of the transaction, the name and address of the person to whom the drug was sold and the kind and quantity of drug sold.

There was also evidence of sales of paregoric made on other dates to Mrs. Griffin, of which no record was made until after the defendant's release on bail August 26, 1957.

The indictment upon which Peacock was tried charged him only with the offense alleged to have been committed on August 26, 1957. We are, therefore, not here concerned with sales alleged to have been made by him on other days, with the failure to timely record such sales, or with the failure to comply with other provisions of the "Uniform Narcotic Drug Act;" but only with the specific offense charged in the indictment.

The first sentence of § 54-504 sets out that "the form of records" to be kept by vendors of exempted preparations shall be prescribed by the State Board of Pharmacy. The second sentence sets out what should be recorded by receivers of narcotic drugs. The third sentence is phrased in broad and general terms. While it specifically sets out that the record of all narcotic drugs sold or otherwise disposed of "shall show the date of selling, administering, or dispensing, the name and address of the person to whom or for whose use, * * * the drugs were sold, administered or dispensed, and the kind and quantity of drugs," it does not set out the time at which the entry "showing" the above facts shall be made, that is, on the day of the transaction, at the time of the transaction, within a reasonable time thereafter, or as soon as possible. It wholly lacks certainty and definiteness as to the time of such entry, and is so vague in that respect that a person of ordinary intelligence cannot determine "whether or not he has violated the law at the time he does or fails to do the act, which is charged to be a violation thereof." *Caldwell v. Commonwealth, infra,* 198 Va. 458. Thus, it is clear that the third sentence of § 54-504 utterly fails to measure up to constitutional requirements in the particular respect under review.

We have recently stated the principles which govern the determination of the validity of a criminal statute in *Caldwell* v. *Commonwealth*, 198 Va. 454, 94 S. E. 2d 537. There we said:

"It is elementary that an act creating a statutory offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, that is, what must be done or avoided, so that a person of ordinary intelligence may know what is thereby required of him. 14 Am. Jur., Criminal Law, § 19, pp. 773, 774; 22 C. J. S., Criminal Law, § 24-a, pp. 70-72. The enactment should define the acts to be done or not to be done which

constitute such offense with such certainty that a person may determine whether or not he has violated the law at the time he does or fails to do the act, which is charged to be a violation thereof. *State* v. *Lantz*, 90 W. Va. 738, 111 S. E. 766, 26 A. L. R. 894. Unless an act creating a statutory offense satisfies this requirement of certainty and definiteness it violates the Due Process Clauses of the Fourteenth Amendment and of the Virginia Constitution. Article 1, § 8," 198 Va. p. 458.

Again, in *Mundy Motor Lines* v. *Du Pont*, 199 Va. 933, 103 S. E. 2d 245, in determining the validity of a statute fixing rates of contract carriers, we quoted, with approval, the following statements:

" 'If the terms in which it (a statute) is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judically, it is necessarily inoperative.' " *Drake* v. *Drake*, 15 N. C. 110. 199 Va. at pages 937 and 938.

We then said:

"In 50 Am. Jur., Statutes, § 472, p. 484, the principle is stated thus: 'In the enactment of statutes reasonable precision is required. Indeed, one of the prime requisites of any statute is certainty, and legislative enactments may be declared by the courts to be inoperative and void for uncertainty in the meaning thereof. This power may be exercised where the statute is so incomplete, or so irreconcilably conflicting, or so vague or indefinite, that the statute cannot be executed and the court is unable, by the application of known and accepted rules of construction, to determine what the legislature intended, with any reasonable degree of certainty.'

"Like statements are found in 82 C. J. S., Statutes, § 76, p. 133; 17 M. J., Statutes, § 27, p. 269." 199 Va. at page 938.

The above principles fully apply here.

The Attorney General argues that we should hold the language of § 54-504 as sufficient to put any one coming under its provisions on notice that an accurate record must be made at the time of sale or delivery of the drug. He says that the provisions in the Federal statute, Internal Revenue Code of 1954, Title 26, § 4702, U. S. C. A. are substantially the same as those in the Virginia statutes here involved. He points out also that pursuant to the Federal statutes, the United States Commissioner of Narcotics and the United States Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, have adopted regulations relating to the manufacture and sale of opium and derivatives thereof, and that Article

185 of such regulations, which became effective on April 1, 1949, reads, in part, as follows:

"*Every* manufacturer, producer, compounder, or *vendor* (including dispensing physicians), *of exempt preparations shall record all sales*, exchanges, gifts, or other dispositions, *the entries to be made at the time of delivery*." (Emphasis added).

The Attorney General further contends that the provision of the above regulation has been incorporated in the Virginia statute, in view of the final provision of § 54-504. We think the contention is without merit. The requirement that the entries be made "at the time of delivery" is but a regulation pursuant to and authorized by a Federal statute, and we have no such provision in the Virginia statutes. Moreover, the presence of the provision in the Federal regulation emphasizes the absence of such provision in the Virginia statute.

We hold that the third sentence of § 54-504, under which the prosecution of this defendant is based, is fatally defective, in that it fails to specify the time when the dispenser of "exempted" narcotic drugs shall record a sale thereof. The judgment of conviction cannot stand. We cannot supply the deficiency in the statute, or undertake to make the statute definite and certain. That is the function of the legislature.

The judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*