# Richmond

SOUTHERN RAILWAY COMPANY v. COMMONWEALTH OF VIRGINIA.

March 9, 1964.

Record No. 5724.

Present, All the Justices.

*Thomas B. Gay* and *H. Merrill Pasco* (*Roderick D. Sinclair; Richmond & Via*, on brief), for the plaintiff in error.

*Frederick T. Gray, Special Counsel* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

Carrico, J., delivered the opinion of the court.

Southern Railway Company was charged, in a warrant issued on the complaint of the Chief Forest Warden of Albemarle County, with failing to keep its right of way clear of weeds, grass and decayed timber, in violation of Code, § 56-426. Following its conviction in the County Court, the railway appealed to the Circuit Court.

In the Circuit Court, the railway entered a plea of not guilty and also filed a demurrer which attacked the constitutionality of Code, § 56-426. The Court, sitting without a jury, heard the evidence, overruled the demurrer, convicted the railway and, pursuant to Code, § 56-449, fined it $500.00. We granted the railway a writ of error.

The evidence showed that the railway had failed to clear its right of way in Albemarle County of combustible weeds and grass. It was also shown that in the ten-year period from 1953 to 1962, there were 1320 forest fires caused by railroads in Virginia; that there were 239 such fires in 1962, the highest number in any year of the ten-year period, and that in 1962 forest fires caused by railroads represented 14.8 per cent of all forest fires occurring in Virginia.

The railway does not question that the evidence was sufficient to prove that it had failed to clear its right of way as required by Code, § 56-426. It strongly contends, however, that the Code section is unconstitutional because:

"(a)   it is so vague and uncertain in its terms that it does not adequately inform the defendant of what must be done to avoid criminal prosecution; and

"(b)   it bears no substantial relation to public safety since it requires the area of the right of way which is beyond the danger from fire to be cleared."

Code, § 56-426, which finds its origin in the Acts of 1902-3-4, Ex. Sess., ch. 609, p. 993, reads as follows:

"*Manner in which right of way shall be kept.*—Every railroad company shall keep its right of way clear and free from weeds, grass, and decayed timber, which from their nature and condition are combustible material, liable to take and communicate fire from passing trains to abutting or adjacent property."

This statute is but the legislative establishment of a criminal offense from a common law rule of civil liability. In much the same language as is employed in the statute, this Court, in 1881, more than twenty

years before the statute was enacted, in the case of *Richmond and Danville Railroad Co.* v. *Medley*, 75 Va. 499, established the rule that a railroad company, "may be guilty of gross negligence in allowing the accumulation of dangerous combustible matter along its track, easily to be ignited by its furnaces, and thence communicated to the property of adjacent proprietors." The Court ruled that a verdict in favor of an adjacent landowner was supported by sufficient evidence where it was shown that the sparks from the railroad engine had set on fire dry grass and broom-sedge which the company had permitted to remain on its right of way and, "of course liable at any moment to be set on fire. . . ."

Although Code, § 56-426 has been a part of the law of this Commonwealth for sixty years or more, this is the first time we have been called upon to determine its validity. The statute was applied in a civil case, *Iron Company* v. *Railroad Company*, 200 Va. 698, 107 S. E. 2d 421, but there no attack was made upon its constitutionality.

We find that similar statutes have been enacted by a number of our sister states, but our research has not disclosed, nor has there been cited to us, any criminal case in which the validity of such statutes has been passed upon. However, the Supreme Court of Illinois in a civil case, *Checkley* v. *Illinois Cent. R. Co.*, 257 Ill. 491, 100 N. E. 942, 945, in construing a statute quite similar to the one before us, said, "[t]his statute is a valid, constitutional law and binding upon all railroads in this state."

As has been noted, the railway's contention is that the statute is void because it is vague and indefinite and bears no substantial relationship to public safety. The gist of the railway's argument is that the statute fails to state how the right of way is to be cleared; when it is to be cleared; what is to be cleared from it; what is combustible material, and how much of the right of way is to be cleared.

The rules for testing the validity of a statute, in the face of such an attack, were stated in *Caldwell* v. *Commonwealth*, 198 Va. 454, 458, 94 S. E. 2d 537:

"It is elementary that an act creating a statutory offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, that is, what must be done or avoided, so that a person of ordinary intelligence may know what is thereby required of him. . . . The enactment should define the acts to be done or not to be done which constitute such offense with such certainty that a person may determine whether or not he has violated

the law at the time he does or fails to do the act, which is charged to be a violation thereof. . . . Unless an act creating a statutory offense satisfies this requirement of certainty and definiteness it violates the Due Process Clauses of the Fourteenth Amendment and of the Virginia Constitution. Article I, § 8."

With these principles in mind, we first turn our attention to the purpose to be served by the statute in question, the evil sought to be corrected by the legislature. The purpose was to remove the danger occasioned by fires set out by passing trains and communicated to abutting or adjacent property. The evil which the legislature sought to correct was that combustible material was permitted by the railroads to exist on their rights of way—material which would take and communicate fires and thereby create the danger to abutting or adjacent property.

And how did the legislature seek to carry out this purpose, to eliminate this evil? By the plainest and most direct method at hand— by requiring the railroad companies to keep their rights of way clear and free of combustible material liable to take and communicate fire from passing trains to abutting or adjacent property.

The crucial question is, however, is this legislative requirement laid down in language that is reasonably certain and definite? We are of opinion that the question should be answered in the affirmative. The legislature has used no magic words, no words of legislative art or legal artifice. The language employed is in everyday usage and is commonly understood.

It might well be that questions will arise as to the applicability of the statute, or opinions may differ with respect to what falls within its terms, or difficulty might be experienced in its enforcement. But these matters do not, in and of themselves, render the statute invalid. *Fallon Florist* v. *City of Roanoke*, 190 Va. 564, 590, 58 S. E. 2d 316. If such situations develop, it is not because the statute is vague and indefinite but because of the unpredictability of the subject matter of the legislation—fire, and because of the need for flexibility in provisions relating to the control thereof. The statute reasonably informs the railroad companies what must be done or avoided thereunder, and that is all that is demanded by the constitutional requirement of statutory certainty.

It is true that the legislature has not told the railway, as the latter complains, whether the listed combustible materials should be burned, grubbed and raked, mowed or otherwise disposed of. But we cannot declare a statute unconstitutional merely because the legislature has

failed to prescribe the precise method by which a common, everyday task, such as ridding land of weeds, grass and decayed timber, is to be performed. The railway might well have a just complaint had the legislature limited it to only one method when several acceptable methods are available.

The District Forester, in his testimony, recommended that the railway plow firebreaks and then burn the combustible material between such firebreaks and its tracks. The railway resists this recommendation, saying that it cannot wait until the weeds, grass and decayed timber on its right of way are so dry that they will burn, because it would then already be in violation of the statute.

Here, the railway merely begs the question, but, in any event, its argument fails to sustain the invalidity of the statute. The legislature is not concerned with how the railway makes its right of way "clear and free", so long as the method employed is lawful and proper. And the legislature apparently considers burning of such material on the railway's right of way to be a proper method. In Code, § 10-62, the legislature has provided that in counties under the direction of the State Forester as to forest fire control, no person shall set fire to, nor procure another to set fire to, any inflammable material, capable of spreading fire, within 300 feet of any woodland or brushland, except between the hours of 4 p. m. and midnight, during the period beginning March 1 and ending May 15 of each year. The legislature has specifically exempted from this restriction, however, those fires, "set on rights of way of railroad companies by their duly authorized employees."

It is also true that the statute does not, as the railway argues, say when the right of way is to be cleared, in terms of a specific date or of a specific period. But the statute does, with reasonable certainty, inform the railway when it must act, and that is all that is necessary.

It must be borne in mind that the danger from which the statute provides protection is the likelihood that fires will be communicated from passing trains via combustible material on the right of way to adjacent property. The time for the railway to act to avert this likelihood is when the weeds, grass and decayed timber on the right of way, which are the means of such communication, become so combustible as to be dangerous to the adjacent property. And it does not take a scientist or other expert to say when broom-sedge will burn. Any lad who has roamed the field or fished the stream can supply that answer.

Nor, as the railway points out, does the statute list, by each com-

mon or technical name, all the species of weeds which must be cleared. To the lament of the homeowner, gardener and farmer, the presence of weeds is so easily recognized and the meaning of the word "weeds" is so commonly understood that further definition in a statute would hardly seem necessary. But, in any event, the definition in *Webster's Third New International Dictionary* of a weed as, "an economically useless plant: a plant of unsightly appearance; esp: one of wild or rank growth", is sufficient.

With regard to the term "decayed timber", the railway first says that the statute fails to inform it when a dead tree has decayed to the extent that it should be removed from the right of way. The statute supplies the answer to this question. Such a tree is decayed, for the purposes of the statute, when it has become, "combustible material, liable to take and communicate fire from passing trains to abutting or adjacent property."

The railway next asks, "What is timber?" and points out, in its brief, that the word "timber" has been narrowly defined as trees which are suitable for conversion into wood for construction, manufacturing and other commercial uses. But we have held that, as used in the common acceptation of the word, "timber" means trees, without any reference to the uses to which they may be put. *Craddock Mfg. Co.* v. *Faison*, 138 Va. 665, 670, 671, 123 S. E. 535.

Which meaning did the legislature intend in Code, § 56-426? Here, the purpose of the statute supplies the answer. The legislature was, in this respect, seeking to eliminate the danger of fire spreading through decayed timber which has become combustible material. Obviously, fire can spread just as easily and quickly through decayed trees which never have had any commercial value as it can through those which once may have had great value.

We are required to give to the statute a reasonable construction— one which will, if possible, give effect to its obvious purpose. *Norfolk So. Ry. Co.* v. *Lassiter*, 193 Va. 360, 364, 68 S. E. 2d 641. Viewed in this light, the word "timber", in the statute before us, can be held to have only one meaning—trees, without any reference to the uses to which the same may be put.

The statute does not, as the railway asserts, contain a specific and separate explanation of the term "combustible material." But there can be no doubt that the words, taken in their ordinary sense and in the context in which they are used in the statute, mean weeds, grass and decayed timber that are so dry that they are likely to be ignited by a passing train and, in burning, communicate fire to

adjacent property. The Court had no trouble in the *Medley* case, *supra*, in 1881, in perceiving that similar words meant, "liable at any moment to be set on fire." We have no difficulty in this respect now, nor in holding that the term is not vague and indefinite.

■ Finally, it must be conceded that the statute fails, as the railway argues, to specify in feet the width of the right of way which must be cleared. We cannot conceive that such a burden rested upon the legislature, but, in any event, we are of opinion that the statute adequately informs the railway as to how much of its right of way must be cleared.

Here again, it is important to remember that it is the danger of the spread of fire from passing trains via the material on the right of way to adjoining or adjacent property that the statute is designed to protect against. If that danger exists, then as much of the right of way must be cleared of the specified combustible materials as is necessary to remove the danger. What might be necessary in one place and under certain conditions might not be required at another place or under different conditions. And if there is no such danger at all, then no such clearing is necessary.

Thus, it would have been impractical or well-nigh impossible for the legislature to specify the exact area to be cleared in every circumstance. By requiring that only such area be cleared as is necessary to abate the danger of spreading fire, the legislature has provided a flexible, rather than a vague, standard designed to meet the exigencies of each situation. In so doing, the legislature has equated the interests of the public and of the railroad companies and substantially related its action to the public safety.

The railway relies on the cases of *Caldwell* v. *Commonwealth, supra,* and *Peacock* v. *Commonwealth,* 200 Va. 464, 106 S. E. 2d 659, in support of its contention that Code, § 56-426 is vague and indefinite. A reading of the opinions in those cases discloses substantial differences between the statutes there involved and the one now under consideration. Different subjects were being treated and different results were sought. Those cases are clearly distinguishable from the case now before us and cannot control our decision here.

For the reasons expressed, we find Code, § 56-426 to be a valid and constitutional legislative enactment. Accordingly, the judgment appealed from will be

*Affirmed.*

WHITTLE, J., dissenting.

I cannot agree with the majority opinion. Section 56-426 reads:

"Every railroad company shall keep its right of way clear and free from weeds, grass, and decayed timber, which from their nature and condition are combustible, liable to take and communicate fire from passing trains to abutting or adjacent property."

I agree with the railroad's contention that the court erred in overruling the demurrer which raised the question of the constitutionality of the section because it violates the due process clause of the 14th Amendment of the United States Constitution and of § 11 of the Virginia Constitution in that:

(a) It is so vague and uncertain in its terms that it does not adequately inform the defendant of what must be done to avoid criminal prosecution; and

(b) It bears no substantial relation to public safety since it requires the area of the right of way which is beyond the danger from fire to be cleared.

It appears that the section had its origin in the Acts of 1902-3-4, extra sessions, Chapter 609, page 993. Both sides to this litigation apparently conceded that this is the first appeal from a criminal prosecution under this section in the sixty years of its existence, and therefore its constitutionality has never been challenged.

The majority opinion in rather apologetic terms points out the weakness of the statute which would tend to show that it is void for vagueness. It says:

"It is true that the legislature has not told the railway * * * whether the listed combustible materials should be burned, grubbed and raked, mowed or otherwise disposed of * * * ."

"It is also true that the statute does not * * * say when the right of way is to be cleared in terms of a specific date or of a specific period * * * ."

"Nor * * * does the statute list by each common or technical name, all the species of weeds which must be cleared * * * ."

"The statute does not * * * contain a specific and separate explanation of the term 'combustible material'."

"Finally it must be conceded that the statute fails * * * to specify in feet the width of the right of way which must be cleared * * * ."

The above faults pointed out in the opinion are apparently answered in the opinion to the satisfaction of the majority. I regret they are not answered to my satisfaction.

The constitutional requirement of definiteness is violated by a criminal statute which fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. The principle is that no man shall be held criminally responsible for conduct which he cannot reasonably understand. See *United States* v. *Harriss,* 347 U.S. 612, 74 S. Ct. 808, 98 L.ed. 989.

As stated by Chief Justice Eggleston in *Caldwell* v. *Commonwealth,* 198 Va. 454, 94 S.E. 2d 537 (1956) "It is elementary that an act creating a statutory offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, that is, what must be done or avoided, so that a person of ordinary intelligence may know what is thereby required of him. 14 Am. Jur., Criminal Law, § 19, pp. 773, 774; 22 C.J.S., Criminal Law, § 24-a, pp. 70-72. The enactment should define the acts to be done or not to be done which constitute such offense with such certainty that a person may determine whether or not he has violated the law at the time he does or fails to do the act, which is charged to be a violation thereof. *State* v. *Lantz,* 90 W. Va. 738, 111 S.E. 766, 26 A.L.R. 894. Unless an act creating a statutory offense satisfies this requirement of certainty and definiteness it violates the Due Process Clauses of the Fourteenth Amendment and of the Virginia Constitution, Article I, § 8."

The vagueness of several terms employed in the section in my opinion, makes it invalid. For example, what are the dimensions of a "right of way"?

It will be seen that the statute affirmatively requires that the "right of way" be kept clear of certain combustible materials, but it fails to describe or define the width of the "right of way".

The only section in the Code which prescribes the width of a right of way is § 56-347 which limits the land that a railroad can acquire by condemnation for its "right of way" to 100 feet, except where more land is needed for cuts or fill. While the railway is prohibited from condemning more land than 100 feet, it is nowhere prohibited from buying more land to add to its right of way and this practice is more or less universally followed.

The question then arises as to whether a railroad company which has purchased a strip of land 400 feet wide for right of way purposes violates § 56-426 if it fails to keep all 400 feet clear. Or, for example, if the railroad right of way is 100 feet wide at one place and farther along its line the right of way widens to 200 feet the question arises does the statutory duty increase as the width of the right of way in-

creases. If a 100 foot clearance *is sufficent protection against fires from passing trains* how can the statute lawfully require the clearance of an additional 100 feet? The situation can be magnified to a point of absurdity if, for example, the railroad company acquired for right of way purposes a strip of land a mile wide and constructed its main line through the center. Does the statute require the full width of a mile be cleared?

The significant point is that there is no specified width mentioned in § 56-426. The record in this case discloses that the Southern Railway Company's rights of way are of varying widths throughout the state. For the statute to be valid the term "right of way" must describe a definite strip of land. Apparently there is no agreement among the authorities as to what the term "right of way" is intended to include. See 74 C.J.S., Railroads, § 82; 44 Am. Jur., Railroads, § 75.

In the instant case the testimony of the Commonwealth witnesses showed that there was disagreement among them as to what the term "right of way" meant. It was apparent that the Forestry Division [of the State] is prevented from uniformly applying the statute. George W. Dean, State Forester, testified that so far as the Forestry Division was concerned there would be sufficient compliance with the statute if the right of way was cleared for a distance of "70, 75 feet in a horizontal distance" as no probable danger of communication of fire would exist beyond this point.

Dallas Wilfong, District Forester for 16 counties in Virginia, stated that "50 to 75 feet" from the ballast should be cleared to comply with the statute. Here the evil of the statute is pinpointed up by this testimony. Further Hunter H. Garth, Chief of Forest Protection, *refused to specify* a distance that would provide adequate safety. He stated: "I would want to look at a specific area, if I was going to do it. I wouldn't like to sit here and put a definite figure on it."

Thus the individual officers of the Forestry Division, the expert witnesses for the Commonwealth, have undertaken without success to cure the deficiency of the statute by prescribing a required clearance distance, and in witness Garth's case he can prescribe a distance only after studying the right of way at the given point in question.

Under such circumstances is it fair to the railroads of this State that they be left in such doubt as to what must be done to comply with the statute? Clearing 60 feet of the right of way might comply with Wilfong's requirements, but it would not comply with those

prescribed by Dean. And compliance with Dean's 75 foot distance would hardly assure protection against prosecution on warrants issued at the instance of the Commonwealth's attorney for failing to clear rights of way to their outer boundary.

Such indefiniteness is the basic reasoning behind our decision in *Caldwell* v. *Commonwealth, supra,* where we invalidated that portion of § 46-189 which required any occupant of an automobile involved in an accident, or any witness to the accident "to furnish as much of the information hereinbefore required as possible if the driver is unable or unwilling to furnish it". The failure to comply with this statute was made a misdemeanor and we held that the quoted portion of the statute was invalid because of its uncertainty and particularly since it failed to state *when* and *to whom* the information had to be furnished. See 14 Am. Jur., Criminal Law, § 19, p. 774 (p. 459).

It will be seen from the statutes of several of the states which have laws similar to the section under consideration that they definitely prescribe the distance from the track which must be cleared.

Manifestly the statute is deficient in failing to prescribe such distance. Mr. Dean's opinion as a safe distance differs from Mr. Wilfong's and Garth's distance may differ from that of a judge or jury which may be called upon to determine whether the railway has violated the statute. This total lack of an ascertainable standard in my view violates the railway's rights to due process of law. Courts are not at liberty to supply this fatal omission by Judicial legislation.

The next question that presents itself is when does the right of way have to be cleared? In other words, when must the railroad company remove combustible material from the right of way to avoid prosecution? Must it remove such material as soon as it becomes combustible? The statute does not say. The statutes of many of the states which have passed similar laws give definite dates between which the combustible material must be removed. Under the section here under consideration it immediately becomes important to know when grass and weeds become combustible. Can the railway wait until after the first killing frost in the fall before it clears its right of way or must it clear it in the summertime if a drought makes the grass, weeds, etc. combustible earlier? Manifestly, the failure of the statute to prescribe a specific date, or dates, for the removal of such material places upon the railroad companies the danger of prosecution as a result of management's poor judgment as to when the statute must be complied with. The offensive material may be combustible

today and not tomorrow, depending upon weather conditions. Clearly this is not that degree of certainty required of a penal statute.

The rationale of the *Caldwell* case was followed in *Peacock* v. *Commonwealth*, 200 Va. 464, 106 S.E. 2d 659, which latter case involved the constitutionality of the Virginia statute related to records required to be kept by sellers of certain narcotic drugs. There we held the statute unconstitutional because it did not set out the *time* at which entries relating to sales were required to be made in the record book. There, speaking through Mr. Justice Spratley, we said:

"While it [the statute] specifically sets out that the record of all narcotic drugs sold or otherwise disposed of 'shall show the date of selling, administering, or dispensing, the name and address of the person to whom or for whose use, * * * the drugs were sold, administered or dispensed, and the kind and quantity of drugs,' it does not set out the time at which the entry 'showing' the above facts shall be made, that is, on the day of the transaction, at the time of the transaction, within a reasonable time thereafter, or as soon as possible. It wholly lacks certainty and definiteness as to the time of such entry and is so vague in that respect that a person of ordinary intelligence cannot determine 'whether or not he has violated the law at the time he does or fails to do the act, which is charged to be a violation thereof.' *Caldwell* v. *Commonwealth*, *infra*, 198 Va. 458. Thus, it is clear that the third sentence of § 54-504 utterly fails to measure up to constitutional requirements in the particular respect under review."

The *Caldwell* and *Peacock* cases emphasize the indispensability of requiring that the act be done by a specified time. The fatal omission of the time by which the right of way must be cleared cannot be cured by the arbitrary suggestion of the State Forester that the right of way should be cleared by November 15 of each year. The statute does not say this. Dean's testimony to this effect accentuates more vividly the deficiency of the statute which makes it a crime not to remove the combustibles from the right of way, but fails to prescribe the time or deadline for removal.

Next, what does "clear and free" as provided in the statute mean? Is the railway company required to grub and rake its right of way or does the statute require that specified material may be mowed or cut from the right of way, or is burning of the right of way proper compliance with the statute?

It is recommended by Commonwealth's witness Garth of the Forestry Division that the right of way be cleared by burning the

combustibles. This would be the cheapest method of clearing the right of way, but the very fact that combustibles can be cleared by burning would be an admission on the part of the railroad that it had already violated the law and thus become subject to prosecution by permitting the vegetation on the right of way to accumulate and become combustible. Therefore the railroads of the State could not safely rely on the interpretation placed on the statute by the Forestry Division. It would have been an easy matter for the legislature to have informed railroad companies of the exact nature of the statutory duty in this regard.

Next the statute says that the railroad must remove "weeds, grass and decayed timber" from the right of way. Nowhere does the statute attempt to define these terms. Here again the Commonwealth's own witnesses could not agree as to what constituted a "weed". Witness Garth described a weed as a "wooden substance larger than a grass and smaller than a shrub". While witness Dean defined a weed as "any of the vegetation that does not have an economic, commercial or ascetic value" and he agreed that "as a practical matter" the classification was determined by its location. On this subject the court stated "a weed has been defined as a flower misplaced".

Mr. Garth went further and characterized wild roses, honeysuckle, blackberry bushes and morning glories not as weeds, but *vines*. None of these are required to be removed by the code section.

Neither could the State's witnesses agree on the definition of timber as employed in the statute. The statute uses the phrase "decayed timber". The word decayed means "rotten". Webster's New International Dictionary 2d ed. 1939. Whereas timber means only such trees as would be suitable for converting into lumber. Thus the phrase "decayed timber" is susceptible to varied meanings and lacks the precision required in criminal statutes.

Again one may ask the meaning of the phrase "which from their nature and condition are combustible material, liable to take and communicate fire from passing trains to abutting or adjacent property". The clause modifies the words "weeds, grass and decayed timber". Therefore it is not all such material that is required to be removed from the right of way, but only that which is combustible and liable to be set on fire by passing trains and to transmit the fire to adjacent property. Witness Dean testified that this condition of combustibility would require the railroad to begin clearing the right of way by November 15. However he admitted that what may be

combustible today might not be combustible tomorrow because of differences in humidity, temperature, wind and atmospheric conditions. Obviously a violation of the statute could not occur after the material had become wet from rain and conversely drought conditions might create a combustible condition before November 15. Thus between these two extremes it would be impossible to determine what the nature and condition of the material must be to create a "liability" to be ignited by passing trains. See *Griffin* v. *State*, 86 Tex. Cr. R. 498, 218 S.W. 494.

The doubts created by the uncertain terms of this statute clearly emphasize that its vagueness would prevent a railroad company from being sufficiently informed of the elements of the criminal act supposed to be involved.

None of the important terms employed in the statute have been defined by the legislature. Nowhere is the railroad informed of the distance from the track which must be cleared or the time by which the combustibles must be removed. Jurors in one section of the State would vary in their definition of the term "weed" as did the expert Commonwealth witnesses, and the same can be said for the term "timber". And again it is manifestly clear that no one, be he judge or juror, is capable of telling the day on which "timber" becomes "decayed". The statute clearly lacks any ascertainable standard to determine when the specified material is combustible and "liable" to communicate fire from trains to adjacent property.

The statute's failure to prescribe a *specified width* of right of way which must be cleared requires the railroad to clear those parts of its right of way which the Forestry Division has recognized to be *"beyond the area of probable danger from fire"*. Thus this requirement of the statute bears no substantial relation to safety and for this reason makes the statute invalid. I would hold the statute unconstitutional.