PRESENT:  All the Justices

GEICO ADVANTAGE INSURANCE COMPANY
AND GEICO CHOICE INSURANCE COMPANY

                                                 OPINION BY

v.  Record No. 220004              JUSTICE WESLEY G. RUSSELL, JR.
                                              DECEMBER 1, 2022

LIOSHA MILES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
David Eugene Cheek, Sr., Judge

GEICO Advantage Insurance Company and GEICO Choice Insurance Company

(collectively "GEICO") appeal a decision of the Circuit Court of the City of Richmond granting

summary judgment to Liosha Miles ("Miles") on the issue of whether each of the two insurance

policies at issue provided separate tranches of insurance for uninsured motorist ("UM") coverage

and underinsured motorist ("UIM") coverage.  GEICO asserts that the circuit court erred in its

interpretation of Code § 38.2-2206 and the insurance policies, contending that the statute and

each of the applicable policies provide only a single tranche of coverage applicable to both UM

and UIM claims.  For the reasons that follow, we agree with GEICO and reverse the judgment of

the circuit court.

## I.  Background[1]

On April 18, 2019, Miles sustained extensive personal injuries in a single automobile

accident caused by the negligence of two different drivers.  One driver, Carlos Figuero, was

insured under an automobile insurance policy issued by Integon General Insurance Company

("Integon") with a liability limit of $25,000.  The second driver ("Doe") did not stop at the scene

---

[1] Miles initiated the proceedings in the circuit court by filing a declaratory judgment
action that sought to determine the amount of insurance coverage available to her from all
sources.  The parties stipulated to the evidence and proceeded on cross-motions for summary
judgment.  Accordingly, the facts are undisputed.

of the accident and was never identified, and thus, is considered an uninsured motorist pursuant to Code § 38.2-2206(B).

At the time of the accident, Miles was insured under two policies: she was the named insured under a GEICO Advantage policy covering her vehicle and also was a covered insured under her brother's GEICO Choice policy by virtue of her being a "resident relative" of the named insured. Each of the GEICO policies contained UM/UIM coverage with bodily injury limits of $50,000 per person and $100,000 per occurrence.[2] GEICO concedes that Miles' injuries from the accident resulted in damages that exceeded all available insurance coverage, "no matter how that is calculated."

On behalf of Figuero, Integon tendered its policy limit of $25,000. Claiming a $25,000 credit as a result of Integon's tender, GEICO Advantage tendered $25,000 related to Miles' claim against Figuero. GEICO Advantage also tendered an additional $25,000 related to Miles' claim against Doe, the unknown, and hence, uninsured motorist. Thus, GEICO Advantage tendered a total of $50,000 as a result of Miles' UM/UIM claims. As a result of these tenders, GEICO Advantage asserted that it had exhausted the limits of its policy's UM/UIM coverage.

Separately, GEICO Choice tendered $50,000 to Miles related to her claim against Figuero. GEICO Choice made no tender related to Miles' claim against Doe. As a result of its tender, GEICO Choice asserted that it had exhausted the limits of its policy's UM/UIM coverage.

Miles asserted that neither GEICO entity had exhausted its limits of UM/UIM coverage. Contending that each policy provided both a $50,000 limit for UM claims *and* another $50,000 limit for UIM claims, she asserted that the GEICO Advantage policy provided her $75,000 in

---

[2] The UM/UIM endorsement for each policy is identical.

2

coverage—$50,000 in UM coverage for her claims related to Doe and $25,000 ($50,000 less the $25,000 credit for Integon's tendering its coverage limits) in UIM coverage for her claims related to Figuero—and that the GEICO Choice policy provided her with $100,000 in coverage—$50,000 in UM coverage for her claims related to Doe and $50,000 in UIM coverage for her claims related to Figuero. Accordingly, Miles argued that GEICO Advantage owed her $25,000 more than its tenders and that GEICO Choice owed her $50,000 more than its tender.

Given her disagreement with GEICO, Miles filed a complaint for declaratory judgment in the circuit court. She sought a declaration that each policy contained separate $50,000 limits for UM and UIM coverage. Given the prior tenders made by the GEICO entities for her claims related to Figuero, Miles also sought a declaration that GEICO Advantage owed her an additional $25,000 for her UM claims related to Doe and that GEICO Choice owed her an additional $50,000 for her UM claims related to Doe.

GEICO countered by arguing that each policy provided a single $50,000 limit for both UM and UIM claims. It asserted that there was a single UM/UIM endorsement in each policy and that UIM coverage is properly understood as a subset of UM coverage. GEICO also argued that Miles' proffered interpretation of the statute ran afoul of the limits on coverage imposed by Code § 38.2-2206(A).[3]

The parties stipulated that the facts were not in dispute and submitted the matter to the circuit court on cross-motions for summary judgment. The circuit court held a hearing on the

---

[3] The statute provides that the pertinent coverage "shall equal but not exceed the limits of the liability insurance provided by the policy, unless any one named insured rejects the additional uninsured motorist insurance coverage[.]" Code § 38.2-2206(A). Miles' GEICO Advantage policy provided her with liability coverage for bodily injuries in the amount of $100,000 per person/$300,000 per occurrence; however, it is undisputed that Miles rejected UM/UIM coverage in that amount.

cross-motions. At the close of the hearing, the circuit court announced it was granting Miles' motion for summary judgment and denying GEICO's cross-motion.

Subsequently, the circuit court entered an order granting judgment in favor of Miles and denying GEICO's cross-motion for summary judgment. The order stated that each GEICO entity had been "obligated to provide separate uninsured motorist (UM) and separate underinsured motor vehicle (UIM) coverages where a plaintiff is injured by the concurring negligence of one uninsured motorist and the operator of one underinsured motor vehicle." As a result, the circuit court concluded Miles was entitled to an additional $25,000 in coverage from GEICO Advantage related to her claims against Doe and an additional $50,000 in coverage from GEICO Choice related to her claims against Doe.

GEICO noted an appeal to this Court, advancing multiple assignments of error that can be distilled to one question: did the circuit court err in concluding that Code § 38.2-2206 requires insurers to provide separate coverage limits to cover both UM and UIM claims arising from a single accident as opposed to there being a single limit with UIM coverage being a constituent part of a policy's UM coverage limit? Recognizing that there is a split in the circuit courts on this question, we granted GEICO's petition to resolve the issue.

## II. Analysis

### A. Standard of review

We review a circuit court's grant of summary judgment de novo. *VACORP v. Young*, 298 Va. 490, 494 (2020). Similarly, issues of statutory interpretation and the interpretation of insurance contracts present questions of law subject to de novo review in this Court. *See Virginia Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 454 (2022) (statutory

4

interpretation); *Copp v. Nationwide Mut. Ins. Co.*, 279 Va. 675, 681 (2010) (interpretation of insurance policies).

In addressing questions of statutory interpretation, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (internal quotation marks omitted) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). "[W]e determine the General Assembly's intent from the words contained in the statute." *Williams v. Commonwealth*, 265 Va. 268, 271 (2003) (citing *Vaughn, Inc. v. Beck*, 262 Va. 673, 677 (2001); *Thomas v. Commonwealth*, 256 Va. 38, 41 (1998)). "[W]ords in a statute are to be construed according to their ordinary meaning, given the context in which they are used." *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993) (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982)). In applying these principles, we also consider "the evil sought to be corrected by the legislature" when it adopted the pertinent language. *Southern Ry. Co. v. Commonwealth*, 205 Va. 114, 117 (1964).[4]

## B. Code § 38.2-2206(A)

The parties agree that the dispositive question in this appeal is whether Virginia law requires an insurance company to provide separate UM and UIM coverage in an automobile

---

[4] Miles argues that "Virginia's uninsured and underinsured motorist insurance statute is remedial in nature and must be liberally construed to accomplish the intended purpose of protecting innocent victims of negligent uninsured and underinsured motorists." This maxim, generally applicable both to the construction of insurance contracts and remedial statutes affecting insurance, "does not confer a right or impose a duty on the courts to add new conditions, provisions, or exceptions to such contracts [or statutes] which increase or decrease the obligations of the parties thereto." *State Farm Mut. Auto. Ins. Co. v. Arghyris*, 189 Va. 913, 928 (1949). Rather, it is but a tiebreaker, applicable only in cases in which competing interpretations are equally plausible. For the reasons that follow, this is not such a case.

liability policy or if the UIM coverage is properly understood as a component part of the UM

coverage.[5]  To answer this question, we turn to the language of Code § 38.2-2206(A).

In pertinent part, Code § 38.2-2206(A) provides that an automobile liability insurance

policy must

> contain[] an endorsement . . . undertaking to pay the insured all
> sums that he is legally entitled to recover as damages from the
> owner or operator of an uninsured motor vehicle, within limits not
> less than the requirements of § 46.2-472.  Those limits shall equal
> but not exceed the limits of the liability insurance provided by the
> policy, unless any one named insured rejects the additional
> uninsured motorist insurance coverage by notifying the insurer as
> provided in subsection B of § 38.2-2202. . . .  The endorsement . . .
> shall also obligate the insurer to make payment for bodily injury or
> property damage caused by the operation or use of an underinsured
> motor vehicle to the extent the vehicle is underinsured[.[6]]

Affording the words chosen by the General Assembly their plain and ordinary meanings, we

conclude that UIM coverage is a constituent part of UM coverage and does not represent a

separate tranche of available coverage when UM coverage has been exhausted.

In reaching this conclusion, we first note that the statutory language makes clear that

there is but one endorsement, not two, required by Code § 38.2-2206(A).  The statute requires

that every automobile liability policy issued in Virginia "contain[] *an* endorsement" insuring

covered insureds against injuries and damages negligently caused by "the owner or operator of

an uninsured motor vehicle[.]"  *Id.*  (Emphasis added).  In using the singular "an" to modify

---

[5] It is undisputed that the language of the UM/UIM endorsements at issue tracks the language of the statute.  Thus, this appeal is resolved by determining what the statute requires.

[6] Code § 38.2-2206(B) provides definitions of both "uninsured" and "underinsured" motor vehicles.  Pertinent here, an "uninsured motor vehicle" is a vehicle for which the "owner or operator is unknown."  "A motor vehicle is 'underinsured' when . . . the total amount of bodily injury and property damage coverage applicable" to that vehicle "is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle."  *Id.*

endorsement, the General Assembly required that every automobile liability insurance policy contain a *single* endorsement that provides coverage for damages caused by "the owner or operator of an uninsured motor vehicle[.]" *Id.* In short, the statute unambiguously requires that every automobile liability policy sold in Virginia contain "an endorsement" providing UM coverage.

No similar language in Code § 38.2-2206(A) requires a policy to have a separate endorsement providing coverage for damages caused by the owner or operator of an underinsured motor vehicle. To the contrary, the language chosen by the General Assembly to address the issue of damages caused by an underinsured motor vehicle makes plain that UIM coverage is a constituent part of UM coverage.

Specifically, as regards UIM coverage, the statute provides that "[*t*]*he* endorsement . . . shall *also* obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle[.]" *Id.* (Emphasis added). In this context, the word "the" is "used as a function word to indicate that a following noun or noun equivalent refers to someone or something previously mentioned[.]" Webster's Third New International Dictionary 2368 (2002). Given context and the placement of the phrase "the endorsement" in the statute after the reference to "an endorsement" in an earlier sentence, it is clear that "the endorsement" in the fourth sentence of the statute refers to the UM endorsement required by the first sentence of Code § 38.2-2206(A). No other referent is grammatically or logically possible.

The conclusion that the phrase "[t]he endorsement" in the fourth sentence refers to the UM endorsement required by the statute's first sentence finds further support in the General Assembly's use of the phrase "shall also" to define an insurer's obligations related to UIM coverage. The pertinent dictionary definition of "also" is "in addition[.]" Webster's Third New

7

International Dictionary 62 (2002). Thus, the statute provides that "[t]he endorsement" referenced in the fourth sentence provides UIM coverage *in addition* to something else. Given the language of the statute, that something else necessarily is the UM coverage referenced in the first sentence of the statute. Accordingly, it is clear that the statute does not require two endorsements, but rather, requires one endorsement that covers both UM/UIM claims.

The fact that the statute requires one endorsement for both UM and UIM incidents provides a sufficient basis to conclude that UIM coverage is a constituent part of the UM endorsement, and thus, is not a separate tranche of insurance. Any residual doubt is extinguished by the language regarding the limits of coverage available under the endorsement required by Code § 38.2-2206(A). The third sentence of the statute sets coverage limits for the endorsement required by the first sentence of the statute, providing that such "limits shall equal but not exceed the limits of the liability insurance provided by the policy, unless any one named insured rejects the additional uninsured motorist insurance coverage[.]" Code § 38.2-2206(A). This language reflects a policy decision by the General Assembly to afford insured drivers some measure of protection against injuries caused by the acts of others, but to limit that protection to no more in insurance coverage than the insured driver has elected to provide for the benefit of others who may be injured by the acts of the insured driver.

Because the language of Code § 38.2-2206(A) regarding limits appears in the third sentence of the statute, it refers to the "endorsement" required by the first sentence of the statute. Thus, if UIM coverage is not part of that "endorsement[,]" but rather is a separate tranche of insurance, the statute provides no limits on the amount of UIM coverage that could be purchased. Given the General Assembly's decision to place a cap on coverage amounts in

Code § 38.2-2206(A), such a result—a cap on UM coverage with no corresponding cap on UIM coverage—would represent an anomaly bordering on an absurdity.

Although our conclusion is compelled by the words of the statute, we note that it also is consistent with our prior cases addressing the UM/UIM statute. Specifically, we previously have observed that UIM coverage "is included in uninsured motorist coverage. Indeed . . . neither coverage can be purchased independently of the other; rather, when an insured purchases uninsured motorist insurance coverage, he also obtains coverage against underinsured motorists." *Hackett v. Arlington Cnty.*, 247 Va. 41, 43 (1994).

Furthermore, we note that the interpretation adopted by the circuit court is inconsistent with what we have identified as the purpose behind the General Assembly's 1982 decision to amend the UM statute to include UIM coverage. We long have held that the "purpose of the underinsured motorist provision was to allow insureds to receive the same level of protection whether an insured or uninsured driver injures them." *Superior Ins. Co. v. Hunter*, 258 Va. 338, 345 (1999) (citing *Nationwide Mut. Ins. Co. v. Scott,* 234 Va. 573, 575-76 (1988)). As such, the 1982 statutory amendment was designed to correct an "anomaly" under the prior statute in which "a person injured by an uninsured motorist could realize greater financial protection than if injured by an insured motorist[;]" it "was not enacted to expand protection to injured parties generally." *Trisvan v. Agway Ins. Co.*, 254 Va. 416, 419 (1997).

Here, the circuit court's interpretation of the statute not only fails to address "the evil sought to be corrected by the legislature[,]" *Southern Ry. Co.*, 205 Va. at 117, it leads to the very anomaly that the 1982 statutory amendment was designed to eliminate. Under the circuit court's interpretation, Miles would be in a better position from an insurance coverage perspective because she was hit by one underinsured motorist and one uninsured motorist as opposed to two

9

underinsured motorists.  Such a result simply cannot be reconciled with our prior cases or the purpose of Code § 38.2-2206(A).  *See Hunter*, 258 Va. at 345; *Trisvan*, 254 Va. at 419; *Scott*, 234 Va. at 575-76.

As stated above, both the text of the Code § 38.2-2206(A) and our prior cases interpreting the statute lead inexorably to the conclusion that UIM coverage is a constituent part of UM coverage.  As a result, the circuit court erred in concluding that the statute required each policy to provide Miles with separate UM and UIM coverage limits for injuries arising from a single accident.

CONCLUSION

For the foregoing reasons, the circuit court erred in granting Miles' motion for summary judgment and denying GEICO's cross-motion for summary judgment.  Accordingly, we reverse the judgment of the circuit court and enter final judgment in favor of GEICO.

*Reversed and final judgment.*