## CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Joseph Matthew Reid

November 12, 1981

Case No. F-81-2228

By JUDGE JOHN W. WINSTON

Mr. Reid is charged with three separate violations of Virginia Code § 63.1-124.1 amounting to grand larceny. The separate indictments stating the charges recite that:

> On or about (March 19, 25, and April 2, 1981), in the City of Norfolk, Joseph Reid did, knowingly and with intent to defraud, acquire, alter, or use food stamps in a manner not authorized by law. Virginia Code Section 63.1-124.1; 18.2-95.

His counsel filed a Motion for Bill of Particulars, seeking to determine among other things "what specific code sections proscribe his alleged conduct.

The Commonwealth timely responded to such motion, identifying them as "Code of Virginia Section 63.1-25.2 (1950, as amended), including Federal and State laws and regulations referred to therein. Virginia Code Section 18.2-95 also proscribes defendant's conduct."

Code § 63.1-124.1 reads that:

Whoever knowingly and with intent to defraud transfers, acquires, alters or uses food stamps, or possesses food coupons or authorization to purchase cards in any manner not authorized by law shall be deemed guilty of larceny and, upon conviction thereof, be punished accordingly.

Code § 63.1-25.2 states that:

The State Board of Welfare (now State Board of Social Services) is authorized, in accordance with the federal Food Stamp Act, to implement a food stamp program in which each political subdivision in the State shall participate. Such program shall be administered in conformity with the rules and regulations of the State Board.

The trial of Joseph Reid on these charges began on October 29, 1981. At the conclusion of the Commonwealth's evidence, defendant's counsel conceded that a prima facie case existed on the facts but moved to strike on the ground that Code § 63.1-124.1 was unconstitutionally vague and thus in violation of the due process clauses of the Virginia and United States Constitutions. The court hearing the case without a jury reserved ruling on the motion. Defendant's counsel advised the court upon inquiry that he would have no evidence to present on defendant's behalf. On that note trial was interrupted to allow counsel time to brief the court and for it to consider the constitutional question as raised.

Defendant argues that procedural due process requires a criminal statute to give fair warning of prohibited conduct and that this statute (§ 63.1-124.1) does not meet such standard. He quotes the rule from *Caldwell v. Commonwealth*, 198 Va. 454, 458 (1956), as follows:

It is elementary that an act creating a statutory offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, that is, what must be done or avoided, so that a person of ordinary intelligence may know what

is thereby required of him. (Citations). The enactment should define the acts to be done or not to be done which constitute such offense with such certainty that a person may determine whether or not he has violated the law at the time he does or fails to do the act, which is charged to be a violation thereof. (Citation). Unless act creating a statutory offense satisfies this requirement of certainty and definiteness it violates the Due Process Clause of the Fourteenth Amendment and of the Virginia Constitution. Article I, § 8.

Approved in *Peacock v. Commonwealth*, 200 Va. 464, 468 and 469 (1959).

Before reaching its decision here the court examined both the Food Stamp Act referred to in § 63.1-25.2 and the regulations issued thereunder. Although the Food Stamp Act and its regulations were not officially tendered into evidence at trial, they are here incorporated by statutory reference in § 63.1-25.2 and can be judicially noticed in any event. Virginia Code § 19.2-265.2.

The Food Stamp Act is a federal statute enacted by Congress. It can be found printed in Title 7, United States Code Annotated, § 2011 et seq. The federal regulations implementing the statute are printed in the Code of Federal Regulations and cited as 7 C.F.R. § 271 et seq.

The Act reflects the policy of Congress to alleviate hunger and malnutrition in the United States by authorizing a food stamp program which would permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation. (Section 2011). The Secretary of Agriculture is authorized to formulate and administer such food stamp program under which, at the request of a state agency, eligible households in that state shall be provided an opportunity to obtain a more nutritious diet through the issuance to them of an allotment (at no cost). The coupons so received by such households are to be used only to purchase food from approved retail food stores, which coupons when so used will be redeemed at face value by the Secretary. (Section

2013(a)). Regulations deemed necessary or appropriate for the administration of the federal program are authorized to be issued (§ 2013(c)). Participation in the food stamp program shall be limited to those households whose incomes and other financial resources are a substantial limiting factor in permitting them to obtain a more nutritious diet (§ 2014(a)). And the Secretary must set uniform national standards of eligibility for participation by such households, standards which State agency operational plans must meet (§ 2014(b)). Household income and financial resources are minutely described for eligibility purposes (Sect. 2014(d)(e)(f)(g)). Eligibility disqualifications are described (§ 2015). The act specifies that coupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the program and at prices prevailing in such stores (§ 2016(b)). Coupons accepted by such stores are to be redeemed through approved wholesale food concerns or banks, with the cooperation of the Treasury Department (Section 2019). Civil and criminal penalties are provided for the violation of the Act or regulations issued under it. These include the knowing use, transfer, acquiring, alteration or possession of coupons or authorized by such Act or such regulations (§§ 2021 and 2024).

It is clear from this examination that a comprehensive program has been devised by the Federal Government to assist eligible households to obtain needed food for their personal use at a financial discount funded by the taxpayers of this country. It is equally clear that non-eligible persons have fair warning not to try and benefit from this program and that criminal sanctions will follow if they do.

Virginia Code § 63.1-25.2 is the vehicle through which the Commonwealth implements and operates that program here. And Virginia Code § 63.1-124.1 conveys the warning that non-eligible persons who try and benefit from the program will be subject to state criminal sanctions there spelled out.

That a state statute may create a state crime for violation of the federal food stamp program is clear. *See* for example *State of Washington v. Jeske*, 87 Wash. 2d 760, 558 P.2d 162 (1977).

510

These state statutes (§ 63.1-25.2 and § 63.1-124.1) clearly refer back to the federal Food Stamp Act, 7 USCA, Sect. 2011 *et seq.*, which spells out in great detail, loud and clear, the conduct on the part of our citizens that is approved and their conduct that is not approved. No vagueness regarding such criminal conduct can exist and no one with eyes to see and ears to hear can be misled into criminal error so far as this package of statutes is concerned.

Since Mr. Reid, the operator of a retail food store authorized to accept food stamps, is not being subjected to a possible loss of his liberty or property without due process of law, the motion to strike and dismiss the pending indictments on constitutional grounds will be overruled and his objection noted.

Counsel are instructed to select a new date for the continuation of Mr. Reid's trial.