Present:  All the Justices

ETHEL JUNE KRAMER, ADMINISTRATOR OF THE ESTATE OF
  ROBERT JACK KRAMER, DECEASED

v.  Record No. 010392     OPINION BY JUSTICE DONALD W. LEMONS
                                      January 11, 2002
COMMONWEALTH OF VIRGINIA, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

On June 17, 1999, Robert Jack Kramer ("Kramer") was employed by and acting within the scope of his employment with the Virginia Department of Transportation.  Kramer was in one of the Commonwealth's trucks when it was struck by an uninsured motorist and Kramer was killed.

On December 14, 2000 in a separate suit brought on behalf of the Estate, the Circuit Court of the City of Virginia Beach entered judgment against the uninsured motorist in the amount of $650,000 in compensatory damages, $350,000 in punitive damages and $8,547 in funeral expenses.  In this declaratory judgment action brought by the Commonwealth against Ethel June Kramer, Administrator of the Estate of Robert Jack Kramer, Deceased ("Administrator") the Commonwealth conceded that Kramer's estate is entitled to maximum coverage of $25,000 under the terms of the Commonwealth's Risk Management Plan ("the Plan")for uninsured motorist coverage, but denied that the

Plan is liable for additional underinsured motorist coverage of $50,000. The trial Court[1] held that:

> [T]he maximum amount of coverage available to the Estate from the Commonwealth of Virginia in this matter, pursuant to Section 2.1-526.6 of the Code of Virginia, 1950, as amended, and pursuant to the Risk Management Plan of the Commonwealth of Virginia, is $25,000.00 of uninsurance coverage, and the Plaintiff is not entitled to any underinsurance coverage from the Commonwealth of Virginia.

In this appeal, we consider the dispute between the parties concerning interpretation of the Plan.

We are not bound by the trial court's conclusions of law or its construction of terms of the Plan. Rather, "[w]e have an equal opportunity to consider the words within the four corners of the disputed provision." Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984). Therefore, we review the judgment of the trial court de novo.

Under the terms of the Plan, the Commonwealth's vehicles were insured for $100,000 of liability coverage. The coverage limits had been increased from $75,000 effective July 1, 1993. The entire provision for uninsured

---

[1]The Honorable A. Bonwill Shockley rendered the letter opinion dated August 9, 2000. The final order dated November 28, 2000 and the Written Statement of Facts dated January 11, 2001 were signed by The Honorable H. Thomas Padrick, Jr.

2

and underinsured ("UM/UIM") coverage is contained in a
single paragraph of the Plan that provides:

> Coverage applies to uninsured motorists
> exposures pursuant to Section 2.1-526.6.C. of
> the Code of Virginia.  Coverage is limited to
> $25,000 per person in any one accident, $50,000
> for two or more persons in any one accident and
> $20,000 for damage to or destruction of the
> property of others in any one accident.
> Underinsured motorists coverage is limited to
> $50,000 per person.

On appeal, the Administrator argues:  (1) That the
provisions of the Plan are in conflict with the
requirements under Code § 38.2-2206 that UM/UIM coverage
equal liability coverage unless rejected by the insured;[2]

---

[2] Code § 38.2-2206 (A) provides in pertinent part:
> Except as provided in subsection J of
> this section, no policy or contract
> of bodily injury or property damage
> liability insurance relating to the
> ownership, maintenance, or use of a
> motor vehicle shall be issued or
> delivered in this Commonwealth to the
> owner of such vehicle or shall be
> issued or delivered by any insurer
> licensed in this Commonwealth upon
> any motor vehicle principally garaged
> or used in this Commonwealth unless
> it contains an endorsement or
> provisions undertaking to pay the
> insured all sums that he is legally
> entitled to recover as damages from
> the owner or operator of an uninsured
> motor vehicle, within limits not less
> than the requirements of § 46.2-472.
> Those limits shall equal but not
> exceed the limits of the liability
> insurance provided by the policy,
> unless any one named insured rejects

3

and (2) that UM/UIM coverage may be combined under the Plan.

The first issue was not presented to or resolved by the trial court. We will not consider the issue for the first time on appeal. Rule 5:25. See Nichols v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc., 257 Va. 491, 498, 514 S.E.2d 608, 612 (1999).

The second argument advanced by the Administrator is that, "[t]he appellant is entitled to combine the uninsured and underinsured coverage under the plain language of the Commonwealth's Risk Management Plan." The Administrator argues that because the Commonwealth established separate levels of coverage for UM/UIM, "the implication is that the UM and UIM coverage[s] were to be treated separately and aggregated." The Administrator argues that uninsured

the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection B of § 38.2-2202. This rejection of the additional uninsured motorist insurance coverage by any one named insured shall be binding upon all insureds under such policy as defined in subsection B of this section. The endorsement or provisions shall also obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured,

4

motorist coverage of $25,000 should be combined with underinsured motorist coverage of $50,000, for a total of $75,000 coverage.

The Plan states that "[a]ll terms, phrases and definitions used in the Plan shall be those used in the Code of Virginia, as amended." Definitions applicable to this controversy are found in Code § 38.2-2206 as follows:

> "<u>Uninsured motor vehicle</u>" means a motor vehicle for which (i) there is no bodily injury liability insurance and property damage liability insurance in the amounts specified by § 46.2-472, (ii) there is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer, (iii) there is no bond or deposit of money or securities in lieu of such insurance, (iv) the owner of the motor vehicle has not qualified as a self-insurer under the provisions of § 46.2-368, or (v) the owner or operator of the motor vehicle is immune from liability for negligence under the laws of the Commonwealth or the United States, in which case the provisions of subsection F shall apply and the action shall continue against the insurer. A motor vehicle shall be deemed uninsured if its owner or operator is unknown.

> A motor vehicle is "<u>underinsured</u>" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily

> as defined in subsection B of this section.

5

> injury or property damage, including all
> bonds or deposits of money or securities
> made pursuant to Article 15 (§ 46.2-435 et
> seq.) of Chapter 3 of Title 46.2, is less
> than the total amount of uninsured
> motorist coverage afforded any person
> injured as a result of the operation or
> use of the vehicle.

Code § 38.2-2206(B).

Given the definitions applicable to this case, Kramer would have to have been killed by a tortfeasor who was insured, albeit inadequately so, in order to implicate underinsured motorist coverage under the Plan. The evidence is to the contrary – Kramer was killed by a tortfeasor who was uninsured. Uninsured coverage under the Plan is distinct and separate from underinsured coverage.

Finally, in Superior Ins. Co. v. Hunter, 258 Va. 338, 344-45, 520 S.E.2d 646, 649 (1999), we stated:

> Nonetheless, in construing Code § 38.2-2206 as
> a whole, we conclude, even under the facts of
> this case when only one insurance policy is
> involved, that the General Assembly did not
> intend that a vehicle could be "underinsured"
> with respect to itself. In light of the
> provisions of subsection (A), it is clear that
> subsection (B) contemplates a situation in
> which there are at least two applicable
> insurance policies at issue: the liability
> coverage provided by a tortfeasor's insurance
> policy, and the uninsured/underinsured motorist
> coverage provided by an injured party's
> insurance policy.
>
> . . . .

> Read together, subsection (A) and subsection (B) do not contemplate that, under the circumstances of this case, a claimant would be permitted to recover under both the liability and uninsured/underinsured motorist coverages of a single policy.

Although <u>Hunter</u> involved a single policy and efforts to invoke both liability coverage and UM/UIM coverage under the same policy, the principle is nonetheless applicable here. Under the Plan, uninsured coverage is limited to $25,000, while underinsured coverage is limited to $50,000. There is no additional policy of insurance against which to measure underinsured status. Consistent with the principle recited in <u>Hunter</u>, the Plan cannot be underinsured with respect to itself in order to provide additional coverage.

Accordingly, we hold that the trial court did not err in holding on this record that the maximum coverage available in this case under the Plan is $25,000 uninsured motorist coverage. We will affirm the judgment of the trial court.

<u>Affirmed</u>.