JUSTICE LACY
delivered the opinion of the Court.
In this appeal, we construe Code § 38.2-2206 to determine whether, in a single vehicle accident, the uninsured/underinsured motorist (UM/UIM) endorsement of a tortfeasor’s automobile liability insurance policy is to be considered when determining the extent to which the tortfeasor’s motor vehicle is underinsured.
*418 The facts are not in dispute. On April 9, 1994, Bernard J. Trisvan, Jr., was a passenger in a car driven by Marcus Wilson Smith. The car overturned, and Trisvan suffered injuries resulting in damages exceeding $125,000. Smith’s vehicle was insured by Integon Indemnity Corporation (Integon), with policy limits of $25,000 per person for bodily injury liability and $25,000 per person UM/UIM coverage. Trisvan was insured under a family automobile policy issued to his father by Agway Insurance Company (Agway) with a limit of $100,000 for UM/UIM coverage.
Trisvan filed a personal injury action against Smith and served Agway as his underinsurance carrier. In settlement of the personal injury action, Integon paid Trisvan the $25,000 liability limit under Smith’s policy. Agway then tendered Trisvan $75,000 and filed a declaratory judgment action seeking a ruling that $75,000 was the total amount it owed Trisvan under Trisvan’s UM/UIM policy. Trisvan, in his grounds of defense and counterclaim, asserted that the total amount of available UM/UIM coverage was $125,000 and, therefore, Agway was liable for $100,000 rather than $75,000. The trial court, on cross motions for summary judgment, concluded that Smith’s vehicle was underinsured by $75,000, not $100,000, and that Trisvan was therefore only entitled to $75,000 from Agway. We awarded this appeal.
In this case, we are not concerned with construing the terms of an insurance policy to determine whether an applicant is entitled to recovery. Trisvan did not seek recovery from Integon under the terms of the UM/UIM endorsement in Smith’s policy and counsel for Trisvan stated at oral argument that he could not recover under that portion of the policy because of the policy limits. The sole question here requires interpretation of a portion of § 38.2-2206, regarding the method for calculating the amount by which a vehicle is under-insured.
Since 1982, § 38.2-2206 has required that automobile liability insurance policies issued in Virginia include an endorsement which obligates the insurer to pay the insured for damages caused by the operation or use of an underinsured motor vehicle. Subsection (B) of that section provides that a motor vehicle is considered underinsured:
when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such *419 bodily injury or property damage, ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.
Trisvan asserts that, in construing this provision, the legislature’s use of the word “total” commands that even in a sihgle car accident the driver’s UM/UIM coverage always be stacked onto other UM/ UIM coverage. According to Trisvan, the purpose of the 1982 amendments to § 38.2-2206 was to “increase the total protection afforded to insurance claimants injured by negligent motorists. See Nationwide Mutual Insurance v. Scott, 234 Va. 573, 363 S.E.2d 703 (1988).” Therefore, Trisvan reasons, the General Assembly must have intended that, in calculating the extent to which a vehicle is underinsured, a driver’s UM/UIM insurance would be considered to be “afforded” to his passengers even if the driver is the sole tortfeasor. We disagree.
The increased insurance protection for injured claimants, to which Trisvan refers, was not an arbitrary expansion of recovery options. The 1982 amendments were enacted in response to a specific anomaly which had arisen following the adoption of mandatory uninsured motorist endorsements in automobile liability insurance policies. As explained in Scott, a person injured by an uninsured motorist could realize greater financial protection than if injured by an insured motorist, where the injured party had elected uninsured motorist coverage in an amount greater than the liability limits of the insured tortfeasor. 234 Va. at 575-76, 363 S.E.2d at 704. The General Assembly in mandating the underinsurance endorsement corrected this anomaly by allowing a claimant to access the “over-insurance” in his UM/UIM endorsement, even if the tortfeasor was insured. This legislation was not enacted to expand protection to injured parties generally.
Trisvan’s construction of § 38.2-2206(B), requiring the UM/ UIM endorsement applicable to the tortfeasor’s motor vehicle to be stacked onto other available UM/UIM coverage, is also at odds with other portions of § 38.2-2206. Subsection (A) of that section states that the underinsurance endorsement must “obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle.” The reference to damage caused by “an uninsured motor vehicle” contemplates the existence of two motor vehicles, not the single vehicle suggested by Trisvan, when read in the context of the entire subsection. Subsection *420 (A) provides that the amount of UM/UIM coverage can either be equal to or less than the amount of the liability coverage. It may not, in any case, exceed the amount of the liability coverage. Thus, when comparing the amounts of liability and UM/UIM coverage in the tortfeasor’s policy applicable to his motor vehicle, that vehicle could not be “an underinsured motor vehicle.”*
The provisions of subsection (G) of § 38.2-2206 provide another example of the General Assembly’s intentions regarding the use of UM/UIM coverage. That section gives the insurer a right of subrogation for the UM/UIM payment against the person causing the injury. Applying Trisvan’s rationale, the insurer would have a subrogation right against its insured, the negligent driver. We do not believe the General Assembly intended such a result when it sought to eliminate the anomaly discussed above and allowed an insured to access its UM/UIM insurance coverage when injured by an underinsured motor vehicle.
Finally, our interpretation of § 38.2-2206(B) is consistent with the views of other courts in this regard. Policy provisions prohibiting recovery under both the liability and UM/UIM portions in a single vehicle accident have been upheld on both statutory and public policy grounds. See, e.g., Fidelity & Cas. Co. v. Streicher, 506 So.2d 92 (Fla. Dist. Ct. App. 1987), review denied, 515 So.2d 231 (Fla. 1987); Myers v. State Farm Mut. Auto. Ins. Co., 336 N.W.2d 288 (Minn. 1983); Millers Cas. Ins. Co. of Texas v. Briggs, 665 P.2d 891 (Wash. 1983).
For these reasons, we hold that in applying § 38.2-2206(B), a passenger injured in a single vehicle accident is not entitled to include the UM/UIM coverage contained in the tortfeasor’s automobile liability insurance policy when determining the extent to which the tortfeasor’s vehicle was underinsured. Accordingly, we will affirm the judgment of the trial court holding that Agway’s total liability to Trisvan is $75,000.

Affirmed.

 Compare Nationwide Mut. Ins. Co. v. Hill, 247 Va. 78, 439 S.E.2d 335 (1994) (UM/UIM recovery allowed where two vehicles involved).