Present: All the Justices

SUPERIOR INSURANCE COMPANY

                                         OPINION BY
v.  Record No. 982671         JUSTICE LAWRENCE L. KOONTZ, JR.
                                      September 17, 1999
PERCELL HUNTER AND LEKEDRA HUNTER

            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                      Wilford Taylor, Jr., Judge


     In this appeal, we consider whether the underinsured

motorist provision of a tortfeasor's automobile liability

insurance policy is available to satisfy claims of passengers in

the tortfeasor's vehicle who are insured under the same policy

and whose claims for damages exceed the limits of the policy's

liability coverage.

     The pertinent facts were stipulated.  On January 10, 1997,

appellees Percell Hunter and his daughter Lekedra D. Hunter,

plaintiff's below, were passengers in a vehicle owned by Percell

Hunter and driven by his wife, Eva L. Hunter.  The vehicle

collided with a vehicle driven by Ikesha M. Dye.  The accident

caused injuries to Dye and a passenger in her vehicle, as well

as to plaintiffs.

     At the time of the accident, Percell Hunter was the named

insured under an automobile insurance policy issued by

appellant, Superior Insurance Company (Superior).  Eva Hunter

and Lekedra Hunter were also named insureds under the terms of

the policy as persons who were residents of Percell Hunter's

household.  The policy provided liability coverage of $25,000 for each person injured, limited to $50,000 per accident.  The policy also provided uninsured/underinsured motorist coverage with the same limits.

Dye and her passenger filed claims for their damages with Superior alleging negligence on the part of Eva Hunter.  Superior paid these claims, which totaled $38,500.

Plaintiffs subsequently filed claims with Superior for damages resulting from their personal injuries and filed suit against Eva Hunter, alleging that her negligence caused their injuries.[1]  At that time, because of the prior payments to Dye and her passenger, only $11,500 of the $50,000 in total liability coverage for the accident remained available to satisfy plaintiffs' claims.  Since their claims exceeded this amount, plaintiffs, in separate actions argued together at trial, sought declaratory judgments that they were entitled to access the policy's underinsured motorist coverage to satisfy their claims.

At trial, plaintiffs argued that Percell Hunter's vehicle was underinsured because, under Code § 38.2-2206(B), "the total amount of bodily injury and property damage coverage applicable

---

[1]For purposes of this appeal, Eva Hunter is considered solely responsible for plaintiffs' injuries.  Accordingly, Superior's policy is the sole applicable insurance policy for plaintiffs' claims.

2

to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage . . . is less than the total amount of uninsured motorist coverage afforded [them]." They further maintained that Code § 38.2-2206(A) obligates an insurance provider "to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured." Thus, plaintiffs asserted that, because only $11,500 in liability coverage was "available for payment" at the time they made their claims, they should each be allowed to have access to the underinsured motorist coverage provided by Superior's policy.

In a letter opinion, the trial court agreed with plaintiffs' assertions and found that Percell Hunter's vehicle was underinsured to the extent that the $11,500 remaining of the liability coverage was less than $25,000, the total amount of uninsured motorist coverage for each person injured in the accident.[2] We awarded Superior this appeal and consolidated the underlying cases.

---

[2]The trial court held that "Superior's policy definitions for 'available for payment' and 'underinsured motor vehicle' are similar to [those contained in Code § 38.2-2206]." For purposes of our analysis, we agree that there is no material or significant distinction between the policy terms and the statute. Accordingly, we need construe only the provisions of this statute to resolve the issue presented here.

On appeal, Superior contends that resolution of the issue of underinsured motorist coverage in this case requires a two-step analysis under the provisions of Code § 38.2-2206. Because it is only obligated to make payments for bodily injury or property damage caused by the operation of an underinsured motor vehicle pursuant to the mandate of subsection (A), Superior contends that the first step or "threshold question" is to determine whether the vehicle in question is underinsured as defined in subsection (B). Only when it is determined that the vehicle is underinsured is the second step, viz., the extent to which the vehicle is underinsured, reached. Superior contends that the trial court erred in the present case because it failed to make the proper initial determination that Percell Hunter's vehicle was not underinsured as to the claims of Percell and Lekedra Hunter.

In essence, Superior's position is that the mathematical calculations involved in determining whether a vehicle is underinsured are to be made as of the time of the particular accident. The crux of the plaintiffs' position is that those calculations are to be computed as of the time their claims are made. As we will demonstrate, in the present case the distinction in these positions dictates entirely different results. It is in this context that the focus of our analysis is directed to Code § 38.2-2206(B).

4

Code § 38.2-2206(B), in pertinent part, provides that:

> A motor vehicle is "*underinsured*" when, and
> to the extent that, the total amount of
> bodily injury and property damage coverage
> applicable to the operation or use of the
> motor vehicle and available for payment for
> such bodily injury or property damage, . . .
> is less than the total amount of uninsured
> motorist coverage afforded any person
> injured as a result of the operation or use
> of the vehicle.
>
> "Available for payment" means the amount of
> liability insurance coverage applicable to
> the claim of the injured person for bodily
> injury or property damage reduced by the
> payment of any other claims arising out of
> the same occurrence.

(Emphasis added.)

As we have noted above, Superior's policy contained liability and uninsured motorist coverage with identical limits of $25,000 per person or $50,000 per accident. Thus, applying the above statutory provisions at the time of the accident, Superior contends that the vehicle in question was not underinsured with respect to the plaintiffs' subsequent claims. Superior contends that this is so because, at the time of the accident, the liability coverage was not less than the uninsured motorist coverage afforded to the plaintiffs. Rather, the total liability coverage was "available for payment" because that coverage had not been "reduced by the payment of any other claims [those of Dye and her passenger] arising out of the same occurrence." Applying the same statutory provisions at the time

5

their claims were made, plaintiffs contend that the total liability coverage under Superior's policy was no longer "available for payment" because it had been reduced by the payment to the other parties injured in the same occurrence. In this context, plaintiffs contend that as to their claims the vehicle was underinsured because the liability coverage was less than the uninsured coverage "afforded" to them. Thus, the distinction between the parties' conflicting interpretations of Code § 38.2-2206(B) is the point in time when the mathematical calculations of liability and uninsured/underinsured coverage are computed.

In support of its contentions, Superior relies primarily on our holding in Trisvan v. Agway Insurance Co., 254 Va. 416, 492 S.E.2d 628 (1997). In that case, the claimant was a passenger in a car driven by the tortfeasor and was injured when the vehicle overturned in a single-car accident. At that time, the car was insured by a policy issued by the Integon Indemnity Corporation with liability coverage of $25,000 per person for bodily injury and the identical amount of uninsured/underinsured motorist coverage. The claimant was insured under a separate policy issued by the Agway Insurance Company with a limit of $100,000 for uninsured/underinsured motorist coverage. The accident resulted in damages for injuries to the claimant exceeding $125,000. Integon paid the claimant $25,000 under its

liability policy and Agway paid the claimant $75,000 under underinsured motorist coverage provided by its policy.

We affirmed the trial court's judgment that, under Code § 38.2-2206, the $75,000 payment by Agway was the extent to which the vehicle was underinsured. We rejected the claimant's assertion that in calculating the amount by which a motor vehicle is underinsured pursuant to subsection (B) the uninsured/underinsured motorist coverage of the tortfeasor's vehicle even in a single car accident must be "stacked" or added onto other available coverage. In Trisvan, because Code § 38.2-2206(A) provides that the amount of uninsured/underinsured motorist coverage can either be equal to or less than the liability coverage, but not more than the level of liability coverage, we concluded that "when comparing the amounts of liability and [underinsured] motorist coverage in the tortfeasor's policy applicable to his motor vehicle, that vehicle cannot be . . . underinsured" as contemplated by subsection (B) of Code § 38.2-2206. 254 Va. at 420, 492 S.E.2d at 629. In that case, we were not required to address the construction of the "available for payment" term under subsection (B) because there the total amount of the tortfeasor's liability coverage was available for payment to the claimant and, indeed, was paid to him.

7

In the present case, for the reasons that follow, we conclude that the trial court erred in finding that the vehicle was underinsured. The total amount of liability coverage for the tortfeasor, Eva Hunter, has been reduced in the amount of $38,500 by Superior's payment to Dye and her passenger. Only $11,500 remains available for payment from the liability coverage of Superior's policy, as compared with $25,000 per injured person under the policy's uninsured/underinsured motorist coverage. Hence, the language of subsection (B) standing alone might suggest that Percell Hunter's car was "underinsured," therefore, producing a different result here than in Trisvan, where the amount of liability coverage available for payment had not been reduced by other claims.

Nonetheless, in construing Code § 38.2-2206 as a whole, we conclude, even under the facts of this case when only one insurance policy is involved, that the General Assembly did not intend that a vehicle could be "underinsured" with respect to itself. In light of the provisions of subsection (A), it is clear that subsection (B) contemplates a situation in which there are at least two applicable insurance policies at issue—the liability coverage provided by a tortfeasor's insurance policy, and the uninsured/underinsured motorist coverage provided by an injured party's insurance policy.

8

Subsection (A) provides that the limits of the uninsured/ underinsured coverage of any policy issued in Virginia "shall equal but not exceed the limits of the liability insurance provided." It does not permit the amount of liability coverage provided by a policy to be less than uninsured/underinsured motorist coverage provided by that policy. The total amounts of this coverage necessarily is to be determined at the time the policy is issued by the insurance company.

The definition of "underinsured" in subsection (B), however, contemplates just such a scenario, that is, where the amount of the liability coverage is less than the amount of the uninsured/underinsured motorist coverage. The two subsections can be reconciled only if it is assumed, as we do here, that subsection (B) contemplates a situation in which there are two insurance policies at issue. Moreover, subsection (A) states that the underinsured motorist coverage must "obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle." The reference to "an underinsured motor vehicle" contemplates the existence of a second insurance policy.

Read together, subsection (A) and subsection (B) do not contemplate that, under the circumstances of this case, a claimant would be permitted to recover under both the liability and uninsured/underinsured motorist coverages of a single

9

policy.  In the present case, the uninsured/ underinsured motorist coverage provided by Superior's policy would not be "afforded to" plaintiffs.  Thus, there are no underinsured motorist coverages afforded to plaintiffs to compare with the amount of liability coverage "available for payment."

Plaintiffs urge that this case should be distinguished from Trisvan because here the passengers are insureds under the same policy as the tortfeasor/driver.  Before the underinsured motorist provision was added to Code § 38.2-2206, a person injured by an uninsured motorist could receive greater recovery than if injured in the same accident by an insured motorist where that person had uninsured motorist coverage in an amount greater than the liability limits of the insured tortfeasor. See Nationwide Mutual Insurance v. Scott, 234 Va. 573, 363 S.E.2d 703 (1988).  One obvious purpose of the underinsured motorist provision was to allow insureds to receive the same level of protection whether an insured or uninsured driver injures them.  Id. at 575-76, 363 S.E.2d at 704.  The provision was intended to protect injured parties in situations where the amount of coverage available to them was beyond their control, "not to . . . expand protection to injured parties generally." Trisvan, 254 Va. at 419, 492 S.E.2d at 629.

The construction of Code § 38.2-2206 urged by plaintiffs, however, would allow plaintiffs to augment the insurance

10

protection afforded by their liability policy.  As we explained in Trisvan, this would constitute an "arbitrary expansion of [their] recovery options."  Id.  Had plaintiffs contracted for more liability coverage they would have been able to employ it to cover their claims from this accident.  They cannot now augment their liability coverage by accessing the underinsured motorist coverage of their own policy.

Subsection (G) provides further evidence that Code § 38.2-2206 does not contemplate injured passengers recovering under both the liability and underinsurance provisions of a single automobile policy.  That subsection gives insurers a right of subrogation allowing them to recover any payments made under the uninsured/underinsured motorist provision of their policies from the tortfeasor.  In this case, were appellees allowed to recover under the underinsured motorist provision of the policy, Superior could subrogate against its insured, Eva Hunter.  We remain convinced that the General Assembly did not intend such a result when it decided to allow insureds to utilize their uninsured motorist coverage when injured by an underinsured motorist.  See Trisvan at 420, 492 S.E.2d at 629.

For these reasons, we hold that the underinsured motorist provision of a tortfeasor's automobile liability insurance policy is not available to satisfy claims of passengers who are insureds under the same policy and whose claims exceed the

11

limits of the policy's liability coverage.  Accordingly, we will reverse the judgment of the trial court and enter final judgment for Superior.

<u>Reversed and final judgment</u>.
