FIRST DIVISION

May 23, 2005

No. 1-04-1808

MERCURY INDEMNITY COMPANY OF ) Appeal from the

ILLINOIS, ) Circuit Court of

) Cook County.

Plaintiff-Appellee
, ) 

) 

v. ) No. 03 CH 201 
   

)

SUSANNE KIM, Individually and as Special )

Administrator of the Estate of SAM KIM, ) Honorable

deceased, ) 
Stephen A. Schiller, 

) 
Judge Presiding.

Defendant-Appellant
. 
 ) 

JUSTICE GORDON delivered the opinion of the court:

Susanne Kim, individually and as special administrator of the estate of her late husband, Sam Kim, appeals the grant of summary judgment to Mercury Indemnity Company of Illinois in its declaratory judgment action where it sought a declaration of no coverage as to the Kims' uninsured motorist claims.  We affirm.

FACTUAL BACKGROUND 

Hong Yel Khang, of Lindenhurst, Illinois, drove a 1999 Hyundai Sonata in Munsing, Michigan, on September 15, 2001.  Accompanying her in the car as passengers were her husband, Bokim Khang, as well as the Kims.  Hong Yel failed to obey a stop sign at the intersection of two highways and drove her car into another (the second car).  The force of the impact forced that car to roll onto its side and into the path of other oncoming traffic, where it was struck again by a third car.  The local sheriff's department and fire department responded to the scene.  Approaching the crash site, a fire truck driver lost control of his vehicle and struck a sheriff's deputy.  As a result of these cumulative collisions three people died:  Sam Kim, the deputy, and a passenger in the second car.  The driver of the second car, Susanne Kim and Bokim Khang were also seriously injured.

The Khangs' vehicle was insured through Mercury.  Bokim was the named insured, and Hong Yel was listed as an additional driver.  The policy had bodily injury liability coverage limits of $100,000 per person and $300,000 per accident, as well as uninsured and underinsured motorist coverage with the same limits.

After investigating the incident, Mercury concluded that four of the crash victims, the three deceased and Susanne Kim, each suffered individual damages of at least $300,000, the maximum liability insurance payout available to all of the victims under the liability coverage.  Mercury, therefore, attempted to prorate the $300,000 between the six victims, offering to provide $71,250 each to the estate of Sam Kim, the estate of the deputy, the estate of the second car's passenger, and to Susanne Kim, as well as offering $12,000 to Bokim Khang and $3,000 to the driver of the second car.  The Kims, however, also sought to recover $28,500 each under the Khangs' underinsured motorist coverage, so that they would each receive the $100,000-per-person limit provided for bodily injuries.

In response to the Kims' underinsured motorist claims, Mercury filed this declaratory judgment action.
(footnote: 1)  In its complaint, Mercury contended that underinsured motorist coverage was unavailable to the Kims as the Khangs' car was not an underinsured vehicle as defined in the policy.  Specifically, Mercury relied on the following exclusion:

"An underinsured motor vehicle does not include a land motor vehicle:

1. insured under the liability coverage of this policy." 

In their countercomplaint, the Kims contended that the exclusion violated the provision of the Insurance Code requiring the inclusion of underinsured motorist coverage and defining "underinsured motor vehicle," which provided as follows:

"For the purposes of this Code, the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident.  The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle.  However, the maximum amount payable by the underinsured motorist coverage carrier shall not exceed the amount by which the limits of the underinsured motorist coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 2000). 

As shall be discussed further below, the Kims also argued that their receipt of underinsured motorist benefits was mandated under 
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474 (1997), which the Kims represented as holding that a car was considered to be underinsured according to statute when the amount of liability benefits received by an injured party was less than the policy limits for underinsured motorist coverage .  Finally, the Kims alleged that Mercury intended to pay liability and uninsured motorist coverage in claims such as theirs as evidenced by subsequent policy provisions stating:

"Limits of Liability-Bodily Injury

Caused by an Uninsured or Underinsured Motorist

Regardless of the number of cars insured by us or others, separate premiums paid, insureds, claims made, claimants, policies or vehicles involved or lawsuits brought, the most we will pay is the limit of liaiblity shown in the Declarations subject to the following:

* * *

3.  Any amount payable shall be reduced by any amount paid or payable to or for the insured:

* * * 

b.  for bodily injury under the liability coverage of this policy ***.

* * * 

4.  Any payments made to a person for bodily injury under the uninsured or underinsured motorist coverage shall reduce any amount payable to that person under the bodily injury liability coverage of this policy."

The Kims argued that, at the very least, these later provisions created an ambiguity in the policy as a whole that required a construction in favor of coverage for them under the underinsured motorist provisions.

In response to the arguments of the Kims' countercomplaint, Mercury argued, among other things, that 
Cummins
 had been superseded by an amendment to the underinsured motor vehicle coverage statute.  Mercury contended that under the amendment, as recognized in 
Thurman v. Grinnell Mutual Reinsurance Co.
, 327 Ill. App. 3d 920 (2002), an insurer's limit of liability to an injured party was restricted to the difference between the policy limits of any applicable liability coverage and the limits of the underinsured motorist coverage.  Since the Khangs' liability and underinsured motorist policy limits were identical, Mercury argued that no underinsured motorist payments could be due to the Kims by statute.

Both sides moved for summary judgment and the circuit court granted that relief to Mercury.  The Kims appeal presenting the arguments discussed above as well as contending that Illinois' underinsured motorist coverage statute violates constitutional due process and the freedom to contract.   

ANALYSIS 

The Kims first contend that the exclusion of a vehicle insured under the liability coverage of a policy from the underinsured motorist coverage would violate the provisions of the underinsured motorist statute and is therefore unenforceable.  For the following reasons, we disagree.

While there is no particular case upholding the application of the insured car exclusion to prohibit the stacking of underinsured and liability coverage under the same policy, Illinois courts twice upheld the application of a named driver exclusion
(footnote: 2) to preclude uninsured motorist coverage in 
Heritage Insurance Co. of America v. Phelan
, 59 Ill. 2d 389 (1974), and 
Rockford Mutual Insurance Co. v. Economy Fire & Casualty Co.
, 217 Ill. App. 3d 181 (1991).

The 
Phelan
 court observed:

"It is clear from the holdings of 
Barnes[v. Powell
, 49 Ill. 2d 449, 454 (1971)]
, 
Doxtater[v. State Farm Automobile Insurance Co.
, 8 Ill. App. 3d 547 (1972),] and [
Madison County Automobile Insurance Co. v.]Goodpasture
,[49 Ill. 2d 555 (1971),] 
and from the language of the statute itself that the legislative intent was to provide extensive uninsured-motorist protection for those who are 'insureds' under an automobile liability policy.  But neither the statute nor any of these decisions places any restriction on the right of the parties to an insurance contract to agree on which persons are to be the 'insureds' under an automobile insurance policy.  It is only after the parties designate the 'insureds' that the statute and case law become applicable and prohibit an insurance company from either directly or indirectly denying uninsured-motorist coverage to an 'insured.' " 
Phelan
, 59 Ill. 2d at 395.  

In 
Rockford Mutual
, an Economy policy otherwise covering the Fred family automobile precluded all coverage if such vehicle was operated by John Durbin.  
Rockford Mutual
, 217 Ill. App. 3d at 183.  While driving that vehicle, Durbin caused a crash killing his passenger, Larry Sneed.  
Rockford Mutual
, 217 Ill. App. 3d at 183-84.  Sneed's mother, as administrator of his estate, made a liability claim against Economy and, after it was denied based on the named insured exclusion, sought uninsured motorist benefits through her own Rockford Mutual policy that also covered her son as a member of her household.  
Rockford Mutual
, 217 Ill. App. 3d at 183.  Rockford Mutual, in turn, sought a judicial declaration that uninsured motorist benefits were actually due under the Economy policy and that the attempted restriction of the Economy coverage violated the uninsured motorist statute.  
Rockford Mutual
, 217 Ill. App. 3d at 183. 

In rejecting Rockford Mutual's argument, the appellate court reasoned:

"[T]he purpose of the statute, and the public policy expressed therein, is to provide protection to policyholders and named insureds for whom protection is specifically contracted, and not to provide protection to third parties who are strangers to the contract of insurance.  Policyholders and named insureds may recover under their own insurance policy when they are injured as a result of an accident in or with an uninsured motorist or vehicle, just as an injured third party may recover under his or her own uninsured motorist insurance if he or she is injured as a result of an accident in or with an uninsured motorist or vehicle.  Thus, if a passenger is injured in an uninsured vehicle, as in the instant case, that passenger must look to his own insurance policy for recovery under 
its
 uninsured motorist provision.  Because this was the intention and purpose of the statute, it does not violate public policy to recognize the named driver exclusion endorsement in the Economy policy, which renders the vehicle insured thereunder an uninsured vehicle, treat it as such, and require Grace to seek recovery under her own Rockford policy for the death of her son."  (Emphasis in original.)  
Rockford Mutual
, 217 Ill. App. 3d at 186-87.   

While there have been no cases in Illinois specifically addressing the validity of the insured vehicle exclusion from underinsured motorist coverage, there does not appear to be a rational basis on which to distinguish between an exclusion based on a named driver and a named insured vehicle.  In fact, this result, which permits the insured vehicle exclusion to prevent the stacking of underinsured motorist coverage on to liability coverage under a single policy, has been reached by the overwhelming majority of our sister states that have considered the issue.  See, 
e.g.
, 
State Farm Mutual Automobile Insurance Co. v. Shahan
, 141 F.3d 819 (8th Cir. 1998) (applying Missouri law);
 
Kang v. State Farm Mutual Automobile Insurance Co.
, 72 Haw. 251, 815 P.2d 1020 (1991); 
Sullivan v. State Farm Mutual Automobile Insurance Co.
, 513 So. 2d 992 (Ala. 1987); 
Millers Casualty Insurance Co. of Texas v. Briggs
, 100 Wash. 2d 1, 665 P.2d 891 (1983); 
Breaux v. Government Employees Insurance Co.
, 369 So. 2d 1335 (La. 1979) (all approving of the insured car exclusion to prevent stacking of uninsured or underinsured coverages on top of liability coverage); see also 
Cantrell v. Cantrell
, 213 W. Va. 372, 582 S.E.2d 819 (2003); 
Amica Mutual Insurance Co. v. Streicker
, 583 A.2d 550 (R.I. 1990)
; 
Myers v. State Farm Mutual Automobile Insurance Co.
, 336 N.W.2d 288 (Minn. 1983); 
Bulone v. United Services Automobile Ass'n
, 660 So. 2d 399 (Fla. Dist. Ct. App. 1995); 
Pridham v. State Farm Mutual Insurance Co.
, 903 S.W.2d 909 (Ky. App. 1995); 
Jones v. State Farm Mutual Automobile Insurance Co.
, 635 N.E.2d 200 (Ind. App. 1994);  
Koshiol v. American Family Mutual Insurance Co.
, 171 Wis. 2d 192, 491 N.W.2d 776 (Wis. App. 1992); 
Newkirk v. United Services Automobile Ass'n
, 388 Pa. Super. 54, 564 A.2d 1263 (1989) (all upholding the enforcement of similar exclusions, excepting automobiles owned by the insured, or family cars, from the policy definition of uninsured motor vehicle to prevent the stacking of underinsured or uninsured motorist coverages on top of liability coverage); see also 
Terranova v. State Farm Mutual Automobile Insurance Co.
, 800 P.2d 58 (Colo. 1990); 
Hilyard v. Estate of Clearwater
, 240 Kan. 362, 729 P.2d 1195 (1986);
 
Turcotte v. Foremost Insurance Co.
, 460 A.2d 1369 (Me. 1983)
;  
Aitken v. State Farm Mutual Automobile Insurance Co.
, 404 So. 2d 1040 (Miss. 1981)
; 
Holt v. State Farm Mutual Automobile Insurance Co.
, 486 S.W.2d 734 (Tenn. 1972); 
Locey v. Farmers Insurance Co. of Idaho
, 115 Idaho 24, 764 P.2d 101 (Idaho App. 1988) (approving of insured car, owned car, or family car exclusions even when liability coverage was also precluded through other exclusions); see also  
Davis v. Bean
, 804 F.2d 1018 (8th Cir. 1986) (applying Arkansas law); 
Lofberg v. Aetna Casualty & Surety Co.
, 264 Cal. App. 2d 306, 70 Cal. Rptr. 269 (1968); 
Barras v. State Farm Mutual Automobile Insurance Co.
, 118 Ga. App. 348, 163 S.E.2d 759 (1968) (precluding uninsured motorist coverage by following uninsured motorist statutes that defined or contemplated uninsured motor vehicles as autos other than those owned by the insured); 
Wright v. State Farm Mutual Automobile Insurance Co.
, 152 Or. App. 101, 952 P.2d 73 (1998), 
reversed in part on other grounds
 332 Or. 1, 22 P.3d 744 (2001) (enforcing the insured car exclusion included in the policy and contained in the state's underinsured motorist coverage statute); Ohio Rev. Code Ann. § 3937.18(C) (Anderson 2002) ("For purposes of underinsured motorist coverage, an 'underinsured motorist' does not include the owner or operator of a motor vehicle that has applicable liability coverage in the policy under which the underinsured motorist coverage is provided"); see also 
Wyatt v. Maryland Casualty Co.
, 144 N.H. 234, 738 A.2d 949 (1999); 
Mountain States Mutual Casualty Co. v. Martinez
, 115 N.M. 141, 848 P.2d 527 (1993); 
Poehls v. Guaranty National Insurance Co.
, 436 N.W.2d 62 (Iowa 1989) (upholding provisions requiring the offset of liability payments against underinsured motorist coverage so as to effectively preclude the recovery of liability and underinsured motorist payments under a single policy); 
Peterson v. Colonial Insurance Co. of California
, 100 Nev. 474, 686 P.2d 239 (1984) (refusing to allow stacking of underinsured motorist coverage on top of liability coverage as a violation of the principles and purposes of underinsured motorist coverage); but see 
Burton v. State Farm Fire & Casualty Co.
, 796 P.2d 1361 (Alaska 1990); 
State Farm Mutual Automobile Insurance Co. v. Nester
, 459 So. 2d 787 (Miss. 1984) ("expressly disapproving" of 
Aitken
 when evaluating a factual scenario in which there was no liability coverage available to the passenger under the driver's policy); 
Rodman v. State Farm Mutual Automobile Insurance Co.
, 208 N.W.2d 903 (Iowa 1973);
 
State Farm Mutual Automobile Insurance Co. v. Young
, 122 N.C. App. 505, 470 S.E.2d 361 (1996);  
Lewis v. State Farm Mutual Automobile Insurance Co.
, 838 P.2d 535 (Okla. App. 1992); 
Bratcher v. National Grange Mutual Insurance Co.
, 292 S.C. 330, 356 S.E.2d 151 (S.C. App. 1987) (all disapproving of insured car, owned car, or family car exclusions so as to preclude uninsured or underinsured motorist benefits); see also 
Taylor v. Travelers Indemnity Co. of America
, 198 Ariz. 310, 9 P.3d 1049 (2000) (allowing the recovery of underinsured motorist payments to compensate a shortfall of liability payments when the shortfall resulted from liability payments to other injured persons), compare with 
Duran v. Hartford Insurance Co.
, 160 Ariz. 223, 772 P.2d 577 (1989) (precluding the stacking of underinsured and liability coverages when the injured person received the individual policy limit of liability coverage given in the policy).  

Courts upholding these exclusions, or otherwise denying the availability of liability and underinsured motorist coverage under the same policy, have noted that the underlying purpose of underinsured motorist coverage is to protect the insured from the negligent driving of 
another
, underinsured driver, not of the driver with whom he is riding.  See 
Shahan
, 141 F.3d at 822 ("The typically envisioned situation arises when the driver of one vehicle is injured due to the negligence of another driver.  If the second driver's liability coverage is insufficient to compensate for the first driver's injuries, the first driver may recover under his own underinsured motor vehicle policy"); 
Cantrell
, 213 W. Va. at 823, 582 S.E.2d at 823 ("We reiterate that the purpose of optional UIM [underinsured motorist] coverage 'is to enable the insured to protect himself [or herself] if he [or she] chooses to do so, against losses occasioned by the negligence of 
other drivers
 who are underinsured.' [Citation.] 'Other drivers' necessarily infers the drivers of vehicles other than the vehicle owned and operated by the insured"); 
Briggs
, 100 Wash. 2d at 8, 665 P.2d at 895 ("The owner of a vehicle purchases liability insurance to *** protect passengers in the vehicle from his *** negligent driving.  He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured"); 
Liberty Mutual Insurance Co. v. Lund
, 403 Mass. 1006, 1007, 530 NE.2d 166, 168 (1988) ("Underinsurance and uninsured motorist protection is not additional liability insurance but rather is 'limited personal accident insurance chiefly for the benefit of the named insured.' [Citations.]").  

These courts have held that allowing a person to receive benefits under both the liability and underinsured motorist provisions of a single policy would amount to an impermissible rewriting of the policy to increase the liability coverage.  See
 
Peterson
, 100 Nev. at 476, 686 P.2d at 240 ("if we concluded that Peterson could recover both uninsured/underinsured benefits and liability or bodily injury benefits under a single policy, we would essentially be increasing the bodily injury coverage provided by the Colonial policy.  We decline to so rewrite the policy"); 
Kang
, 72 Haw. at 256, 815 P.2d at 1022 ("acceptance of Kang's argument would allow Kang to recover for Kim's negligence under both the liability and underinsurance provisions of the State Farm policy, which would in effect transform underinsured motorist coverage into liability coverage and thus create a duplication of liability benefits"); 
Myers
, 336 N.W.2d at 291 ("The policy definition defining an 'underinsured motor vehicle' to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage"); 
Briggs
, 100 Wash. 2d at 8, 665 P.2d at 895 ("The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance"); see also 
Lund
, 403 Mass. at 1007-08, 530 N.E.2d at 168 ("To interpret uninsurance and underinsurance in the manner urged by the defendant, 'would effectively convert a form of coverage which is distinct from automobile liability insurance . . . to additional liability coverage . . . .   This we decline to do' [Citation.]").  

Finally, these courts have rejected claims that underinsured motorist and liability coverage must be available to a passenger, under the single policy of his or her driver, under statutes mandating the provision of underinsured motorist coverage and defining underinsured motorists as vehicles with less liability coverage than either damages suffered or the underinsured coverage limits.  These courts have found that their respective legislatures contemplated the existence of two insurance policies in their underinsured motorist coverage statutes:  the liability policy of the tortfeasor and the underinsured motorist policy of another driver.  See 
Cantrell
, 213 W.Va. at 375-76, 582 S.E.2d at 823; 
Breaux
, 369 So. 2d at 1338 ("As to coverage under the uninsured motorist provisions of a particular policy, the statute thus contemplates two distinct motor vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the 'uninsured or underinsured' motor vehicle.  In addition, as to each policy containing uninsured motorist coverage, the statute distinguishes between the person insured under the policy in question and the owner or operator of the uninsured or underinsured motor vehicle").  As another example, the Virginia Supreme Court determined that its legislature "did not intend that a vehicle could be 'underinsured' with respect to itself" in 
Superior Insurance Company v. Hunter
, 258 Va. 338, 344, 520 S.E.2d 646, 649 (1999), by comparing the underinsured motorist coverage mandated under statute with the statutory definition of underinsured motor vehicles.  Under Virginia's statutes, underinsured motorist coverage had to be equal in amount to the liability coverage sold
, while an underinsured vehicle was a vehicle with liability limits less than that of the underinsured motorist coverage of an injured party.  
Hunter
, 258 Va. at 344, 520 S.E.2d at 649.  The 
Hunter
 court observed that these provisions were irreconcilable when viewed as applying to a single vehicle for, as identical coverage levels were mandatory for third-party liability and underinsured motorist coverage, there could never, as a matter of law, be an underinsured motor vehicle.  
Hunter
, 258 Va. at 344.  The court concluded, "[T]he two subsections can be reconciled only if it is assumed, as we do here, that [the Virginia Insurance Code] contemplates a situation in which there are two insurance policies at issue."  
Hunter
, 258 Va. at 344, 520 S.E.2d at 649.

In a related vein, some of these courts have noted that allowing the stacking of underinsured motorist coverage on to the liability coverage of the same policy would actually undercut the purpose of uninsured and underinsured motorist coverage statutes since they would serve to make such coverage prohibitively expensive.  See, 
e.g.
, 
Kang
, 72 Haw. at 261, 815 P.2d at 1025 ("By invalidating the contested policy exclusion in this case, this court would, in effect, eliminate the distinction between liability and underinsured motorist coverage and transform the inexpensive underinsured motorist coverage into the more expensive liability coverage.  Consequently, insurers would undoubtedly be compelled to increase the premiums for underinsured motorist coverage, thereby frustrating the legislative objective of optional protection at the least possible cost"); 
Briggs
, 100 Wash. 2d at 8, 665 P.2d at 895 ("This result [of dual recovery] would cause insurance companies to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage.  This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost").

We find the reasoning of our sister jurisdictions persuasive and wholly applicable under Illinois law to the exclusion presented here.  As with the Virginia Insurance Code, our own underinsured motor vehicle coverage statute contemplates that underinsured motorist coverage will be provided in an amount equal to third party liability coverage, yet defines underinsured motor vehicles as those where the underinsured motorist coverage exceeds the amount of liability coverage.  See 215 ILCS 5/143a-2(4) (West 2000) (requiring underinsured motorist coverage to be provided "in an amount equal to the total amount of uninsured motorist coverage provided in [a] policy"); 215 ILCS 5/143a-2(1) (West 2000) (requiring the provision of uninsured motorist coverage "in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured"); 215 ILCS 5/143a-2(4) (West 2000) (" 'underinsured motor vehicle' means a motor vehicle *** for which the sum of the limits of liability under all bodily injury liability insurance policies *** is less than the limits for underinsured coverage provided the insured").  Since liability and underinsured motorist limits are coextensive in an insured's policy under the scheme envisioned by our own underinsured motorist coverage statute, a situation would not arise where that insured's vehicle would be underinsured as to itself.  We therefore detect the same irreconcilability among our statute's provisions as the 
Hunter
 court did, unless we likewise conclude that the statute contemplates underinsured motorist coverage deriving from a second policy, separate from the tortfeasor's.

We are further persuaded that this would be the correct conclusion by the observations of the legislative intent in our underinsured motorist coverage statute and the underlying function of underinsured motorist coverage set forth by our supreme court in 
State Farm Mutual Automobile Insurance Co. v. Villicana
, 181 Ill. 2d 436 (1998), which upheld a family car exclusion to prevent the stacking of underinsured motorist coverage from one policy on to the liability coverage of another policy, where both policies were issued to the same insured but for different vehicles.  The 
Villicana
 court stated that, "[C]learly, such legislation [the underinsured motorist statute] seeks to protect consumers from the risk that a 
negligent third party
 
who carries only the minimum limits of liability 
will be unable to provide adequate compensation for the damages he or she inflicts upon 
the insured
."  (Emphasis added.)  
Villicana
, 181 Ill. 2d at 443.  The 
Villicana
 court went on to note:

"Both the underinsured and uninsured motor vehicle provisions contemplate that consumers will select the total 'package' of coverage, 
i.e.
, liability, uninsured and underinsured, in amounts they 
themselves 
deem adequate for their own protection as well as for the protection of their additional insureds.  As such, underinsured motor vehicle coverage protects the insured and any additional insureds from the risk that a negligent driver of another vehicle (i) will cause injury to the insured or his additional insureds and (ii) will have inadequate liability coverage to compensate the injuries caused by his or her negligence.  Stated differently, this type of coverage guarantees the protection of an injured insured against the possibility that a tortfeasor, over whom the insured has no control, purchases inadequate amounts of liability coverage."  (Emphasis in original.)  
Villicana
, 181 Ill. 2d at 444-45.  

Moreover, the 
Villicana
 court expressed concern that to fail to enforce the exclusion before it "would increase the overall cost of underinsured coverage, a result "not without consequence."  
Villicana
, 181 Ill. 2d at 453.  By its recent statements in accord with the reasoning and concerns of our sister jurisdictions, we perceive that our supreme court would concur with those jurisdictions that underinsured motorist coverage of a negligent driver is not to be stacked onto his liability coverage either on a statutory basis, or under the common understanding and purpose of underinsured motorist coverage. 

We do not see the plurality opinion in 
Cummins
 and its progeny as mandating a different result.
(footnote: 3)  In 
Cummins
, the plaintiff suffered injuries in a two car accident, where the at-fault driver had liability limits identical to the plaintiff's underinsured motorist coverage limits.  
Cummins
, 178 Ill. 2d at 476-77.  The plaintiff received less than the liability policy limits, however, as a result of claims made by the at-fault driver's passengers, and therefore sought underinsured motorist benefits under his own policy.  
Cummins
, 178 Ill. 2d at 477.  The plaintiff's insurer refused to compensate him, arguing that the at-fault driver was not underinsured under either its policy language or the underinsured motorist coverage statute, since the liability policy limits and the underinsured motorist limits were identical.  
Cummins
, 178 Ill. 2d at 477.  The 
Cummins
 plurality, however, perceived an ambiguity as to the meaning of "underinsured" in the statute where the statutory language defined " 'an underinsured motor vehicle' as one 'for which the sum of the limits of liabiltiy under all bodily injury liability insurance policies *** is less than the limits for underinsured coverage" yet set " 'the limits of liability for an insurer providing underinsured motorist coverage [to] be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies *** maintained on the underinsured motor vehicle.' " 
Cummins
, 178 Ill. 2d at 480-81, quoting 215 ILCS 5/143a-2(4) (West 1992).  The 
Cummins
 plurality determined that " 'underinsured' must be defined by comparing the amount of underinsured-motorist coverage to the amount of liability coverage actually recovered from the at-fault driver.  To the extent that the amount of liability insurance actually recovered is less than the amount of 
underinsured-motorist coverage, the liable driver is considered underinsured" (
Cummins
, 178 Ill. 2d at 485-86).

Initially, it should be clear that 
Cummins
 is not factually analogous to the case at bar since it involved the typical, anticipated scenario where an insured only sought underinsured motorist coverage through his own policy and looked only to the tortfeasor's policy for liability coverage.  Therefore, we do not see 
Cummins
 as even attempting to address the permissibility of stacking coverages under a single policy as presented here, where the Kims sought to recover both under the liability and underinsured motorist provisions of the policy of the tortfeasor's vehicle. 

Even more overridingly, however, 
Cummins
 evaluated the underinsured motorist statute prior to its amendment by Public Act 89-658, effective January 1, 1997, to contain the following language: "However, the maximum amount payable by the underinsured motorist coverage carrier shall not exceed the amount by which the limits of the underinsured motorist coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle."  See 215 ILCS 5/143a-2(4) (West 1998).  The plain meaning of the post-amendment language, in a statute that sets forth the minimum coverage required, and was in effect at the time the Khangs' policy issued, would appear to allow the Kims' claims to fail since the liability and underinsured motorist coverage limits were identical under the Khangs' policy.  See 
Lawrence v. Regent Realty Group, Inc.
, 197 Ill. 2d 1, 10 (2001) ("[w]here a statute is clear and unambiguous," "[t]he statute must be enforced as written, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature").  

The Kims contend that 
Cummins
, nevertheless, retained its vitality and applicability to the instant case since the decision postdated the amendment.  However, in making this argument, they neglect that 
Cummins
, by its own admission, merely sought to construe the underinsured motorist statute in effect at the time its plaintiff's policy issued.  
Cummins
, 178 Ill. 2d at 482 ("statutes in force at the time an insurance policy was issued are controlling"); see also 
General Casualty Insurance Co. v. Lacey
, 199 Ill. 2d 281, 285 (2002) ("we look not to the law that was in effect at the time of settlement but at the law that was in effect at the time the policy was issued").  The Kims further argue that we should still adhere to 
Cummins
 because adhering to the plain language of the statute would produce an absurd, unjust result. But, as Justice Freeman pointed out in his 
Cummins
 concurrence, on which the Kims rely, courts only ignore plain statutory language on the grounds of absurd results in order to save the legislature from inflicting harsh, unintended consequences through its legislation so as to still honor the true legislative intent.  
Cummins
, 178 Ill. 2d at 489-90 (Freeman, J., concurring) (" ' "[w]hen the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and will adopt a construction which it may be reasonable to presume was contemplated by the Legislature" ' [Citations.]").  Here, however, as pointed out in 
Thurman v. Grinnell
, the amendatory language "makes the General Assembly's intentions perfectly clear" (
Thurman
, 327 Ill. App. 3d at 928): "to make clear that a determination regarding the maximum amount payable by the underinsured-motorist-coverage carrier is to be based on a comparison of the appropriate 
limits
" (emphasis in original) (
Thurman
, 327 Ill. App. 3d at 928-29).   

Although not raised by the parties, our research has also revealed an older line of cases in Illinois that has, on the specific facts presented, declined to apply the insured car exclusion to uninsured motorist coverage.  See, 
e.g.
, 
Barnes v. Powell
, 49 Ill. 2d 449, 454 (1971) ("The distinction that the uninsured motorist was the driver of the automobile in which plaintiff was a passenger, rather than the driver of another automobile, is not decisive.  As to this particular plaintiff, because she was excluded from the liability coverage of the policy, the automobile was not an insured automobile and the driver was not an insured motorist, notwithstanding that as to all others the automobile and the driver may have been insured.  Because no liability insurance was applicable to the plaintiff at the time of the accident, her uninsured motorist coverage necessarily became effective in light of the legislative mandate"); accord 
Madison County Automobile Insurance Co. v. Goodpasture
, 49 Ill. 2d 555 (1971); 
Doxtater v. State Farm Mutual Automobile Insurance Co.
, 8 Ill. App. 3d 547 (1972).

However, in 
Barnes
 and its progeny, named insureds were denied access to the liability coverage through the operation of another exclusion of the policy for accidents involving their own cars.  Thus, in each of those cases, the parties seeking uninsured motorist coverage were precluded from seeking additional coverage under the liability coverage of those policies.  Here, on the other hand, the insured sought to obtain a dual recovery by simultaneously reaching both the liability and underinsured motorist coverage of a single policy.  As noted earlier, such attempts have been repeatedly rejected since, among other things, they would convert the underinsured motorist coverage into additional liability coverage, a result not contemplated by 
Barnes
 and its progeny since, under their facts, recovery under the liability coverage was precluded.  It was on this basis that the appellate court in 
Rockford Mutual
 distinguished and disengaged its holding from 
Barnes
, 
Goodpasture
, and 
Doxtater
, noting in those cases that
 "named insureds were permitted to recover under their 
own
 uninsured motorist coverage where a specific exclusion rendered their own vehicle in which they were riding uninsured. [Citations.] To deny any insurance coverage to these policyholders would indeed violate the public policy expressed in [the underinsured motorist coverage statute]." (emphasis in original) 
Rockford Mutual
, 217 Ill. App. 3d at 187.  See also 
Terranova
, 800 P.2d at 61 n.2
 ("Some states conclude that uninsured motorist benefits are available because the liability insurance covering the insured's vehicle is excluded [citation to 
Barnes]
"); but see 
Comet Casualty Co. v. Jackson
, 125 Ill. App. 3d 921, 924 (1984) (stating in 
dicta
: "we do not believe [
Barnes'
] holding turned the narrow question as to whether the claimant was expressly or, as here, implicitly denied liability coverage").     

We likewise perceive no ambiguity requiring us to conclude that the exclusion does not mean what it plainly says.  The Kims contend the fourth paragraph in the underinsured motorist coverage's limits of liability section suggests that Mercury contemplated making underinsured motorist and liability payments under the policy for the same accident, and thus creates a conflict with the insured car exclusion and renders the policy ambiguous.  That paragraph states, as previously noted:  "[A]ny payments made to a person for bodily injury under the uninsured or underinsured motorist coverage shall reduce any amount payable to that person under the bodily injury liability coverage of this policy."  However, after viewing it in context, we cannot agree with the Kims' proffered reading of that paragraph.

The second paragraph of the limits of liability section provides:  "[S]ubject to the bodily injury limit for each person; the limit for each accident is the most we will pay for bodily injury to two or more persons in any one accident."  The following, third paragraph states:  "Any amount payable shall be reduced by any amount paid or payable *** for the insured: *** b.  for bodily injury under the liability coverage of this policy ***."  These paragraphs work together so that the exhaustion of the aggregate liability limits correspondingly exhausts the amounts recoverable under the underinsured motorist coverage, thereby precluding supplemental underinsured motorist coverage after the exhaustion of liability coverage.  Paragraph four seems to follow in the same vein, allowing for a counter setoff of any recovery under the underinsured motorist provisions against the amounts recoverable under the liability coverage.  So while, ostensibly, paragraph four might appear to contemplate payments under both underinsured and liability coverages, in effect, it precludes recovery by setting off one coverage from the other, so that if the limits of one are reached, no coverage is left under the other.  Provisions such as this have been recognized and approved of as yet another means of preventing the conversion of underinsured motorist benefits into additional liability benefits.  See 
Wyatt
, 144 N.H. at 237, 738 A.2d at 951, quoting 3 A. Widiss, Uninsured and Underinsured Motorist Insurance § 41.8, at 305-06 (2d ed. 1995) (" '
When an injured person has recovered the full amount of the liability insurance provided ... there is no persuasive reason why the claimant should also be allowed to, in effect, transform the underinsured motorist insurance benefits of the same policy into additional liability insurance coverage in opposition to a clear and unambiguous provision providing for an offset of the amount of liability insurance from the amount of underinsured motorist insurance' " emphasis omitted)).
(footnote: 4) The Kims next contend that the policy is ambiguous as a whole because the policy promises to afford a coverage if a premium charge is indicated on the declarations page and a premium charge is, in fact, indicated for underinsured motorist benefits.  The Kims state "Mercury's promise to provide underinsured motorist coverage when a premium charge is indicated directly contradicts the subject definition of an underinsured motor vehicle and its attempt to deny coverage to [the Kims]."  Similar attacks have been made before in the framework of  illusory coverage challenges and rejected.  See 
Newkirk
, 388 Pa. Super. at 61-62, 564 A.2d at 1266-67; 
Jones
, 635 N.E.2d at 202; see also 
State Farm Fire and Casualty Co. v. Trousdale
, 285 Ill. App. 3d 566, 571 (1996).  The 
Newkirk
 court labeled a nearly identical argument as "specious" because an insured only agrees to pay for coverage as is subsequently provided and defined in the policy.  
Newkirk
, 388 Pa. Super. at 61-62, 564 A.2d at 1266-67 ("the language employed *** to exclude family cars from the definition of underinsured vehicles *** is clear, unambiguous and conspicuous.  Any expectation, therefore, which the [appellants] had that they were paying for underinsured motorist coverage under the circumstances present in this case was unreasonable"); see also 
Luechtefeld v. Allstate Insurance Co.
, 167 Ill. 2d 148, 158 (1995) ("We do not agree with the plaintiff's suggestion that payment of a premium will in all cases create a reasonable expectation in the insured that he will receive the full amount of coverage even where there is clear language in the policy excluding such coverage").  The 
Jones
 court, on the other hand, emphasized that the limitation in the policy did not mean that no coverage was provided in exchange for the premium charged.  
Jones
, 635 N.E.2d at 202.  The 
Jones
 court explained:

"The clear language in [the appellant's] policy demonstrates that the insured would recover underinsured motorist damages if a party 
other than the insured
, who was liable for the insured's injuries was insured in an amount less than the limits of [the appellant's] underinsured motorist coverage.  This provision covers a wide spectrum of reasonably expected circumstances.  In fact, it protects [the appellant] from all underinsured motorists except those that may also be considered insured under her policy.  Applying the above definition, we believe that one express limitation in coverage does not render her policy illusory as a matter of law."  (Emphasis in original.)  
Jones
, 635 N.E.2d at 202.

See also 
Trousdale
, 285 Ill. App. 3d at 571 (finding personal injury umbrella policy to still provide "beneficial [underinsured motorist] coverage" in spite of the fact that "it would not apply to the insured's own underinsured vehicle").  We believe that these holdings are equally applicable to and defeat the Kims' argument.     

We are also unpersuaded by 
Yates v. Farmers Automobile Insurance Ass'n
, on which the Kims rely, since in 
Yates
 the declarations page did more than merely promise "coverage" which could be defined later in the policy; instead, the declarations page appeared to provide a definition of the coverage in conflict with a later limitation.  
Yates
, 311 Ill. App. 3d 797, 800 (2000).  In 
Yates
, the allegedly limiting provision stated that the insurer's limit of liability was the limit shown in the declarations, regardless of the number of insureds or the number of vehicles or premiums shown therein; however, the declarations page itself appeared to suggest separate limits for each of two vehicles for which premium payments were made.  
Yates
, 311 Ill. App. 3d at 799-800.  The 
Yates
 court therefore detected an ambiguity and held that a liberal interpretation in favor of the insured required that the insured be permitted to stack her coverages for both vehicles listed in the declarations.  
Yates
, 311 Ill. App. 3d at 800.  Here, however, the Kims do not claim that the declarations make any contrary representation of what the definition of the coverage is, and they even quote the declarations page's statement that "[T]he limit of the company's liability for each such coverage is stated below 
subject to all the terms of the policy
."  (Emphasis added.)  As we noted before, one of the clear and unambiguous terms of the Mercury policy is that which excludes a car insured under the liability provisions of the policy from being an underinsured vehicle under the underinsured motorist coverage provided in the policy.  See 
Alberto-Culver Co. v. Aon Corp.
, 351 Ill. App. 3d 123, 135 (2004) ("this general policy provision is overridden by specific policy exclusions.  Where an inconsistency arises between a clause that is general and one that is more specific, the latter prevails").

Finally, the Kims contend that the amendatory language of the underinsured motorist coverage statute violates the due process and freedom-of-contract clauses of the United States and Illinois Constitutions.  The Kims argue that the amendatory language, as interpreted by 
Thurman
 and the circuit court below, imposes a blanket limit of liability, improperly precludes parties from contracting for greater coverage, and thereby denies full compensation in multiple-claimant accidents without any rational basis.  We note that the Kims have not, in attempting to support the unconstitutionality of the amendatory language in the statute, presented us with sufficient argument or citation to authority beyond a few boilerplate references to general, first principles, consuming less than a single page of a twenty-five page brief.  S
ee 
People v. Ruiz
, 342 Ill. App. 3d 750, 762-63 (2003) 
("
It is well established that all legislation is presumed to be 
constitutional
 
and that the party challenging the legislation bears the 
heavy burden
 of establishing a clear 
constitutional
 violation")
.  Therefore, we consider this argument waived on appeal pursuant to Supreme Court Rule 341(e)(7) 
(Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001)
; 
Shatkin Investment Corp. v. Connelly
, 128 Ill. App. 3d 518, 530-31 (1984) (holding due process and fourth amendment claims were waived when the appellant only cited to one case defining due process, the text of the fourth amendment, and one case holding that the fourth amendment was applicable to the states); 
In re Estate of Divine
, 263 Ill. App. 3d 799, 810 (1994) (holding argument not to have been properly presented under Rule 341(e)(7) when contention consisted of only one sentence out of a 22-page brief and did not attempt to analyze the underlying evidence); 
Eckiss v. McVaigh
, 261 Ill. App. 3d 778, 786 (1994) ("A reviewing court is *** entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived. [Citation.] Mere contentions without argument or citation of authority do not merit consideration on appeal [citation], nor do statements unsupported by argument or citation of relevant authority"). 

Nevertheless, even if not waived, we would disagree with the Kims' position on its merits.  To begin, the freedom-to-contract clauses of the United States and Illinois Constitutions are not implicated where, as here, the statute pre-existed the contract at issue.  See 
Reed v. Farmers Insurance Group
, 188 Ill. 2d 168, 176 (1999) ("a question *** may arise when the legislature enacts a statute that interferes with an existing contract.  A statute cannot be said to impair a contract that did not exist when the statute was enacted, however [citation] ***").  Moreover, with respect to their due process argument, we can detect a rational basis for the amendatory language, which the parties agree is all that is required for it to pass constitutional muster.  
Reed
, 188 Ill. 2d at 176; 
cf.
 
Florestal v. Government Employees Insurance Company
, 236 Conn. 299, 673 A.2d 474 (1996) (finding a rational basis for a substantially identical statutory scheme against an equal protection challenge).  The rational basis would be to encourage an insured to offer equal protection to third-party victims under the liability coverage of his policy as he would provide for himself under the underinsured motorist coverage of his policy.  See 
Villicana
, 181 Ill. 2d at 447 (holding that underinsured motorist coverage was not designed to allow an insured a greater recovery than would be available to his third-party victims); see also 
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548, 558 (1992) ("the legislature intended to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder").  Under the amendatory language, to increase his own protection, an underinsured motorist would be motivated to increase his underinsured motorist coverage so as to exceed the liability limits of the tortfeasor's policy.  In order to do so, he would be compelled to correspondingly increase his own policy's liability coverage as well, since, as previously noted, the underinsured and liability coverage under a single policy must be in lockstep.  See 215 ILCS 5/143a-2(4) (West 2000).  This would serve to encourage an insured to increase the limits of his liability coverage, and thereby promote the health and welfare of his potential tort victims, should he become a tortfeasor, thus providing a rational basis for the amendatory language.

Finally, even if the amendatory language at issue were unconstitutional, the result would be to reinstate the preamendment provisions of the statute.  These provisions, prior to the inclusion of the amendatory language, would still have prevented the stacking of underinsured motorist coverage on to liability coverage under a single policy for the reasons previously discussed, including that statute's contemplation that an insured may not recover under both coverages for injuries resulting from the same accident.  See 
Villicana
, 181 Ill. 2d at 442-43; 
Hunter
, 258 Va. at 344, 520 S.E.2d at 649; 
Cantrell
, 213 W.Va. at 375-76, 582 S.E.2d at 823; 
Breaux
, 369 So.2d at 1338.  Therefore, the result of this case would remain the same even if we were to conclude that the amendatory language were unconstitutional.

For all the foregoing reasons, we affirm the judgment of the circuit court.  

Affirmed.

O'MALLEY and McBRIDE, J.J. concur.

FOOTNOTES
1:  The action also addressed an uninsured motorist coverage claim on the part of Bokim Khang.  This portion of the action was resolved below and is not a part of the present appeal, however, and therefore merits no further discussion.

2:  Named driver exclusions eliminate all coverages in the event that a particular named person operates the otherwise covered auto.

3:  As an initial matter, we note the limited precedential value of 
Cummins
 since it was a plurality opinion.  See 
Roark v. Macoupin Creek Drainage District
, 316 Ill. App. 3d 835, 845 (2000); 
Ferguson v. McKenzie
, 
202 Ill. 2d 304, 315 n.1 (2001) (McMorrow, J., dissenting)
, quoting 5 Am. Jur.2d Appellate Review § 602, at 298 (1995) (
" '
plurality
 decisions of a state supreme court, in which no majority agrees to the reasoning, are not binding under the doctrine of 
stare decisis
; if a majority merely agrees to a particular result, without agreeing as to the grounds for a decision, the parties are bound by the decision but the case provides no binding authority beyond the immediate parties. Such decisions do not overrule prior or inconsistent decisions, and are not authority on any point concurred in by less than a majority' ").

4:  Admittedly, neither of the parties has satisfactorily explained the circumstances pursuant to which, under paragraph four, a recovery under the underinsured motorist coverage would precede recovery under the liability provisions.  However, in any event, paragraph four does not compel any retreat from the clear import of paragraph 3b, which would exculpate the carrier from any obligation to supplement its liability coverage with an additional recovery under the underinsured motorist coverage for the same claimant.